**Sidney GREENWALD and Jack Friedman, d/b/a Maple Leaf Nursing Home, Plaintiffs-Appellees,**

v.

**Robert P. WHALEN, M.D., Commissioner of Health of the State of New York; Barbara B. Blum, Commissioner of the Department of Social Services of the State of New York; and Howard F. Miller, Acting Director of the Budget of the State of New York, Defendants-Appellants.**

**No. 79, Docket 79–7139.**

United States Court of Appeals, Second Circuit.

Argued Sept. 7, 1979.

Decided Nov. 15, 1979.

Scott B. Lunin, New York City (Marvin L. Tenzer, New York City, on brief), for plaintiffs-appellees.

Paul M. Glickman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., George D. Zuckerman, Asst. Sol. Gen., Paul E. Dahlman, Asst. Atty. Gen., New York City, on brief), for defendants-appellants.

Before KAUFMAN, Chief Judge, NEWMAN and KEARSE, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal from a decision granting a preliminary injunction concerns the due process rights of a nursing home proprietor challenging action by the state agency responsible for regulating such facilities. Although the issue has been the subject of much litigation in recent years, see, e. g., *Case v. Weinberger*, 523 F.2d 602 (2d Cir. 1975); *Langhorne Gardens, Inc. v. Weinberger*, 371 F.Supp. 1216 (E.D.Pa.1974), the particular facts of this case do not present a sufficiently serious question going to the merits to sustain a preliminary injunction. Consequently, we reverse.

Plaintiffs-appellees Sidney Greenwald and Jack Friedman are proprietors of Maple Leaf Nursing Home, a 120-bed facility in Monsey, New York. Virtually all the patients at Maple Leaf are eligible for Medicaid, a state administered program that provides state and federal funds to the medically needy. Under New York's Medicaid program, direct payment of Medicaid funds can be made to facilities such as Maple Leaf that care for Medicaid patients. The rate of compensation for each facility is determined by the New York State Department of Health on the basis of cost figures submitted by the facility and the type of care that is being provided.

Inspection and evaluation of facilities receiving Medicaid funds is performed by the Department. The general practice is to send a team of inspectors to the facility over a period of several months. A facility is rated in eight separate categories, each of which includes a number of specific items. Each category is given one of four possible ratings: "Very Good," "Good,"[1] "Needs Improvement," and "Unacceptable." The overall rating of the facility is determined by the lowest rating that the facility receives in any of the eight categories; thus, eight ratings of "Very Good" are required for an overall rating of that level, while seven ratings of "Good" or "Very Good" and one of "Needs Improvement" results in an overall rating of "Needs Improvement." An overall rating of "Needs Improvement" or "Unacceptable" leads to specific sanctions. For a "Needs Improvement" rating, one sanction is a ten percent reduction in the facility's rate of Medicaid compensation until the problems that led to such a rating are corrected.

State law and regulations establish a procedure for appealing any rating received through this inspection procedure. See N.Y. Pub. Health Law § 2803(1)(c) (McKinney 1977); 10 N.Y.C.R.R. § 413.4 (1977). Within twenty days of the receipt of the official report of a facility's rating (the "rating certificate"), the facility may file with the appropriate regional office a statement of intent to appeal, accompanied by documentation to support the facility's claim, and may request copies of all documents related to the inspection. The regional office then reconsiders the facility's submissions and reaches a second decision. If the facility is not satisfied with this decision, it may pursue its appeal to the Department of Health; this appeal must be filed within twenty days after notification of the regional office decision, and may include additional documentation giving the grounds for disagreement with the regional office.

The evaluation of Maple Leaf Nursing Home consisted of a series of inspections that took place from November, 1976 to August, 1977. One of the inspectors, the sanitarian, noted three problems, which he discussed with appellee Greenwald several times. These problems were lack of adequate evidence that the sprinkler system had been inspected, failure to use disposable humidifier bottles in patient oxygen supply, and improper disposal of pathological wastes. In August, 1977, Maple Leaf received its rating certificate; because it had been given a rating of "Needs Improvement" in one category, "Cleanliness and Safety," its overall rating was "Needs Improvement." This triggered the ten percent reduction in Maple Leaf's rate of Medicaid compensation.

Appellees' response was to deliver a letter to the regional office which requested an appeal, but did not state reasons or provide documentation. At the same time, appellee Greenwald personally requested an oral hearing concerning the rating. The regional office acknowledged appellees' letter and informed them that documentation was required. It also sent a copy of the criteria sheets that had been used to establish Maple Leaf's rating; these indicated the specific rating for each category. Of the five groups of items within the "Cleanliness and Safety" category, two groups were checked in the "Needs Improvement" column; one of these, "Infection Control," listed five individual items, the other, "Safety of Patients and Staff," listed four items. However, each check mark indicating "Needs Improvement" applied to an entire group of items without further specification as to which items within the group were deemed inadequate.

Appellees, convinced that they could not document their appeal without a more specific indication of the basis for the rating, renewed their request to the regional office for an appeal several months later, and sent a similar request to the main office of the

---

1. The single "Good" rating of the previous rating system has been divided into two separate ratings, "Good-State" and "Good-Federal," to indicate compliance with state and federal standards.

Department of Health. Both requests were refused. Appellees then brought suit against the Department in the District Court for the Southern District of New York, alleging that the refusal to grant them an oral hearing to dispute the ten percent payment reduction denied them a protected property interest without due process of law. After an evidentiary hearing, the District Court (Hon. Charles S. Haight, Jr., Judge) granted a preliminary injunction, and the Department appealed.

■ The standards for granting a preliminary injunction in this Circuit require that the plaintiff must show, with respect to the merits of its claim, either "probable success" or, in balance of hardship cases, "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973); see also *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356 (2d Cir. 1976).[2] In this case the plaintiffs cannot meet even the more lenient requirement.

Even if we were to assume that a nursing home proprietor has a property right in his rate of Medicaid compensation sufficient to trigger due process protection when that rate is reduced,[3] and that in some circumstances an oral hearing is required to resolve serious factual disputes, the plaintiffs have received all the protection the Due Process Clause could require in this case. A representative of the Department of Health, the sanitarian, discussed three specific problems with one of the appellees; these problems involved the sprinkler system, the use of non-disposable equipment, and the disposal of pathological wastes. When appellees received a rating sheet with a "Needs Improvement" rating in the subcategories "Infection Control" and "Safety of Patients and Staff," they could reasonably assume that the problems which led to these ratings were at least the ones that had been orally called to their attention by the sanitarian. They could have documented their response to these three problems in requesting an appeal, either by contesting the sanitarian's statements or by presenting evidence that the problems had been solved.[4]

If the regional office or the Department had then responded that this documentation was not adequate, with no further explanation, or had they responded that there were additional problems of an unspecified nature, the appellees would at least have been in a position to claim that inadequate procedures were impairing their ability to contest the adverse evaluation. But the appellees provided no response to the deficiencies with which they knew the Health Department was concerned, despite the fact that all three were in the areas in which they had received an unsatisfactory rating. As to these matters, appellees had received oral notification and an opportunity for an administrative appeal. In an analogous case, this Court has held that a non-specific citation by the Department of Labor concern-

2. In addition to the requisite showing with respect to the merits, the plaintiff must also show irreparable injury. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979).

3. While we have held that a nursing home has a protected property right in its continued certification, *Case v. Weinberger*, 523 F.2d 602 (2d Cir. 1975), the New York courts have indicated that state law does not create a property interest in prospective Medicaid reimbursements, *Sigety v. Ingraham*, 29 N.Y.2d 110, 324 N.Y.S.2d 10, 272 N.E.2d 524 (1971); *Hurlbut v. Whalen*, 58 A.D.2d 311, 396 N.Y.S.2d 518 (1977), thereby creating substantial doubt as to whether a nursing home has a protectible interest in a particular rate of reimbursement. Plaintiffs argue that they are not contending

for a property interest in any particular rate of reimbursement, but instead view the rate reduction as "a decertification *pro tanto*." (Appellees' Br. 18). We express no views on this contention.

4. At the evidentiary hearing in the District Court, appellees testified that the humidifier problem had been solved, that the sprinkler inspection problem was a purely technical difficulty, with no practical significance, and that they were working toward a solution of the pathological waste problem. This is precisely the kind of answer that should have been given to the Department of Health. Even this presentation in the District Court acknowledged that one deficiency remained and disputed only the significance, but not the fact, of another.

ing an occupational safety hazard did not constitute a denial of due process when compliance officers from the Department had visited the plant and discussed the hazard with officials of the company. *REA Express, Inc. v. Brennan,* 495 F.2d 822 (2d Cir. 1974).

 The appellees in this case, having failed to present in their administrative appeal any challenge to the factual circumstances the Department had warned them about, cannot complain that the Department's procedures were constitutionally invalid for lack of an oral hearing. The issue of entitlement to a hearing does not arise until a party indicates that there is a dispute worth hearing. *Pfizer, Inc. v. Richardson,* 434 F.2d 536, 543 (2d Cir. 1970).

The preliminary injunction is vacated.