Emanuel BIRNBAUM, et al., Plaintiffs,

v.

Barbara B. BLUM, Commissioner of State of New York Department of Social Services, et al. Defendants.

No. 82 Civ. 4612 (IBC).

United States District Court, S. D. New York.

Sept. 20, 1982.

**1364**

Marvin Neiman, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of N. Y., New York City, for defendants; Barrie Goldstein, Asst. Atty. Gen., New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

■ Movants, Commissioner of the New York State Department of Social Services, Commissioner of the New York State Department of Health and the Director of the New York Division of Budget, seek an order, pursuant to Fed.R.Civ.P. 12, dismissing the complaint on the grounds that venue is improper, the complaint fails to state a claim upon which relief may be granted; that we should abstain from entertaining jurisdiction because a similar action is pending in New York Supreme Court, New York County. For reasons set forth below, the motion is granted in all respects.

Respondents, Emanuel Birnbaum and Desdemona Jones, licensed operators of the Betsy Ross Health Care Facility (Facility), a 120 bed nursing home located in Rome, New York, commenced this action on July 15, 1982 challenging the determination made by movants that the Facility had received Medicaid payments at an unwarranted and improper high rate from April 1 through December 31, 1977 and consequently owes the State $51,079.66 plus interest.

The gravamen of respondents' assertions is that the denial of an administrative evidentiary hearing by the Department of Health prior to the fixing of the new rate was arbitrary and capricious, in violation of the due process clause of the Constitution, and not supported by substantial evidence. In the underlying action and their application for a preliminary injunction, respondents seek declaratory and injunctive relief enjoining movants from withholding or attempting to recoup any of the alleged overpayments until they have availed themselves of the remedies afforded by law.[1]

Pursuant to the Federal Medicaid Program, a joint state and federal operation, responsibility for reimbursement rates is "determined in accordance with methods and standards developed by the State."[2] In New York, two different rates are used for residential health care facilities. Initially a new facility or one without adequate financial data obtained a rate, referred to as the "group average rate," based on factors including the usual and

---

**1.** On July 15, 1982 respondents moved by way of Order to Show Cause for a temporary restraining order and preliminary injunction enjoining movants "from placing a hold upon, withholding or otherwise interfering with Medicaid payments for ... services provided...." Order to Show Cause, dated July 15, 1982, p. 2. They asserted that due to the precarious financial condition of the Facility, any withholding of Medicaid payments would force its closure. (Defendant Michael J. Nassar, Commissioner of the Oneida County Department of Social Services was never served with the Order to Show Cause and is therefore not a party to that application notwithstanding his opposition to it. *See* Affidavit, V. Michael Liccione, verified August 2, 1982). On July 15th Judge Sweet, sitting in Part One of this Court, signed the Order to Show Cause and made it returnable

July 29th. Judge Sweet on July 20th adjourned the matter to August 3rd at the request of movants. On August 3rd Judge Lowe, then the Part One Judge, stayed the matter for 30 days for consideration by us. On September 2nd respondents moved for a continuance of Judge Lowe's stay which we granted pending disposition of the instant application. *See Birnbaum v. Blum,* Order, dated September 3, 1982.

Movants also moved (on August 26th) for a protective order staying discovery pending our determination of this matter. In light of our disposition here, we need not resolve that application nor respondents' application for a preliminary injunction.

**2.** 42 U.S.C. § 1396(a)(13)(A).

customary charges for comparable services in the same geographic area.[3] The group average rate is only an interim measure. Thereafter, such facilities are required to file with the state agencies involved a cost report covering the first six months in which the facility "has had an overall average utilization of at least 90 percent of bed capacity."[4] Once this threshold has been met, the New York State Department of Health then redetermines the Medicaid reimbursement rate (referred to as the "cost-base rate") predicated on the basis of the actual costs set forth in the report.[5]

Respondents opened the Facility on November 15, 1974 and their initial rates were set by the group average rate. In June, 1977 respondents submitted their first cost report which disclosed that they had a 97% bed utilization for the entire year of 1976. The Department of Health subsequently determined that respondents should have filed their initial six month cost report on or about April 1, 1977 as they had reached the 90% bed occupancy rate 6 months prior thereto. Therefore the Department determined that respondents' reimbursement rate had to be recomputed for the period in dispute, April 1, 1977 to December 31, 1977, based on the actual costs reflected in the report. Respondents were notified on August 22, 1979 that a retroactive rate change had been effected and $51,079.66 was owing the State.[6]

By letter to the Department of Health dated September 20, 1979, respondents appealed this determination and asserted that because the Facility's operating costs were less than like facilities in the same geographic area it should be rewarded, not penalized; and that the downward revision of the Medicaid reimbursement rate would cause "undue hardship on the facility."[7] Respondents, however, did not question or challenge the factual determination by the Department of Health that the Facility had an over 90% occupancy rate for the period April 1, 1977 to December 31, 1977.[8]

The Department of Health considered respondents' September 20, 1979 letter as a request for an administrative evidentiary hearing, and processed it accordingly.[9] On March 15, 1982, movant Department of Health dismissed the appeal and stated that the action taken was "based on policy and the application of regulations and principles used throughout the industry"; that "there [were] no issues of fact presented warranting an administrative hearing"; and that there were no incentive provisions in the Medicaid program for facilities with lower costs than those with which it was grouped.[10]

On May 14, 1982 the Director of Administrative Services for the Oneida County Department of Social Services wrote the Facility, requested payment of the $51,079.66 within 10 days and stated that failure to comply would result in deductions being made against future Medicaid reimbursement payments to the Facility.[11] After a request on May 21, 1982 by the Facility's former counsel that payments be made over a period of time because any "sudden lump sum recoupment would have devasting implications for the cash flow of the . . . Facility," the Director of Administrative Services offered to accept repayment in nine

---

3.  See 10 N.Y.C.R.R. § 86–2.15.

4.  10 N.Y.C.R.R. § 86–2.2(e).

5.  See Affidavit, Edward W. Cavanaugh, verified July 29, 1982, pars. 3–7.

6.  Birnbaum v. Blum, Complaint, filed July 15, 1982, pars. 8–14, 16; Affidavit, Edward W. Cavanaugh, verified July 29, 1982, pars. 4–6.

7.  Affidavit, Edward W. Cavanaugh, verified July 29, 1982, Exh. F.

8.  Id. at par. 12, Exhs. F, G.

9.  Id. at par. 12.

10.  Id. at Exh. G.

11.  Affidavit, V. Michael Liccione, verified August 2, 1982, Exh. 1.

monthly installments as the Department "most definitely would not want to impose any severe hardship on the [Facility's] cash flow."[12] This offer was apparently rejected by the Facility since no repayments have been made.

\*     \*     \*     \*     \*     \*

The incurable flaws presented by the complaint in this action first come to light when we consider the venue provisions relative to this action. The rule regarding venue in an action based on federal question jurisdiction is clear:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought *only in the judicial district where all the defendants reside, or in which the claim arose.*

28 U.S.C. § 1391(b) (emphasis added).

The moving papers in their entirety make abundantly clear that none of the defendants reside in this district and the claim for relief did not arise here.

First, the complaint is fatally defective, for respondents make no allegation whatsoever that two of the defendants, the Commissioner of the Oneida County Department of Social Services and the New York State Budget Director, reside, maintain offices, or have any contact in this district. In fact, the very words of the complaint compel a conclusion inapposite with respondents' contentions here:[13]

> Defendant Michael J. Nassar . . . is the Commissioner of the Oneida County Department of Social Services . . . and maintains an office for the transaction of business at 800 Park Avenue, Utica, New York.
>
> Defendant C. Mark Lawton . . . is the Budget Director of New York State and maintains an office for the transaction of business at the State Capitol Building, Albany, New York.

■ Furthermore, the "official" residence of each movant is Albany, New York.[14] It is beyond cavil that the official residence of state officials is determinative for purposes of venue. As one court has stated:

> Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains *his official residence, that is, where he performs his official. duties.*

*O'Neill v. Battisti,* 472 F.2d 789, 791 (6th Cir. 1972) (quoting 1 Moore's Federal Practice, pp. 1487–88) (emphasis added), *cert. denied,* 411 U.S. 964, 93 S.Ct. 2142, 36 L.Ed.2d 685 (1973). *See Procario v. Ambach,* 466 F.Supp. 452, 453 (S.D.N.Y.1979).

■ Additionally, respondents have failed to prove that the claim "arose" in this district. 28 U.S.C. § 1391(b). In determining where a claim arose, we look to " 'where the contacts weigh most heavily . . . ascertained by advertence to events having operative significance in the case, and a common sense appraisal of the implications of those events for accessibility to witnesses and records.' " *Sharp Electronics Corp. v. Hayman Cash Register Co.,* 655 F.2d 1228, 1229 (D.C.Cir.1981) (citations omitted). *See Weil v. New York State Department of Transportation,* 400 F.Supp. 1364 (S.D.N.Y. 1975); *Jimenez v. Pierce,* 315 F.Supp. 365 (S.D.N.Y.1970).

All of the "operative" and significant events pertaining to this action occurred outside the Southern District of New York. The Facility itself is located in Rome, New York—in the Northern District of New York. Additionally, the affidavit of Edward W. Cavanaugh, Chief Health Care Fiscal Analyst for the New York State Department of Health, makes clear that the actions taken by all parties involved took place in the Northern District of New York. *See* Affidavit, Edward W. Cavanaugh, veri-

---

12. *Id.*

13. *Birnbaum v. Blum,* Complaint, filed July 15, 1982, pars. 6–7.

14. Affidavit, Edward W. Cavanaugh, verified July 29, 1982, Exhs. C, D, E, G.

fied July 29, 1982, pars. 1–12; Exhs. C, D, F, G. Indeed, respondents in their papers in opposition have not even referred to a single fact relative to the merits of their claim which occurred in our district. Accordingly, on the basis of the totality of the contacts presented, we are compelled to conclude that venue does not lie in this district. Further, the "common sense implication" with respect to the availability of proof fortifies our conclusion here. All witnesses and records are located in the Northern District of New York, making that district a far more convenient and proper forum.

■ Against this weighty showing, respondents only argue that they chose this particular venue; their attorneys are located in New York; and as a "practical matter" defendants will suffer no inconvenience by adjudicating this action in the Southern District of New York.[15] However, these arguments are no substitute for the law's clear mandate that the action may only be tried in the district "where all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(b).

Additionally, we entertain serious doubt that respondents state a claim for which relief may be granted. In a case of striking similarity to the case at bar, our Circuit Court of Appeals declared:

> The [Facility] in this case, having failed to present in their administrative appeal any challenge to the factual circumstances ... cannot complain that the Department's procedures were constitutionally invalid for lack of an oral hearing. The issue of entitlement to a hearing does not arise until a party indicates that there is a dispute worth hearing. *Pfizer, Inc. v. Richardson,* 434 F.2d 536, 543 (2d Cir. 1970).

*Greenwald v. Whalen,* 609 F.2d 665, 669 (2d Cir. 1979). In this action respondents have not alleged that there was any factual dispute regarding the retroactive Medicaid rate change; the papers in support of the instant application unmistakably indicate that they did not raise any of these crucial factual issues during the administrative appeal. *See* Affidavit, Edward W. Cavanaugh, verified July 29, 1982, par. 12; Exhs. F, G.

■ Finally, we are compelled to note that even if we could consider the application for a preliminary injunction, we doubt that the relief sought could issue. For injunctive relief to be granted, movant carries the heavy burden of showing, "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Jackson Dairy v. H. P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir. 1979). *See State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745 (2d Cir. 1977); *Sonesta International Hotel Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973). Furthermore, the burden on the party supporting that application is more onerous, where as here, the public interest is involved. *See Medical Society of the State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir. 1977).

■ In an effort to persuade us that irreparable harm exists, respondents assert in their papers in support of the application for injunctive relief that the Facility is in financial difficulty; Medicaid payments account for 85% of its monthly operating revenues; and any withholding or recoupment of payments would have disastrous financial results and force the closing of the Facility. *See* Affidavit, Emanuel Birnbaum, verified July 14, 1982, pars. 10–12. However, we note that on March 15, 1982 respondents were notified that their administrative appeal was dismissed, and it was not until July 15, 1982 (4 months later) that they instituted this action and moved for a

---

**15.** Plaintiffs' Memorandum of Law in Opposition, dated August 2, 1982, pp. 9–10.

preliminary injunction. This unexplained and unacceptable lapse of time is tantamount to laches and grounds for denial of the relief sought. *See Kay v. Austin,* 621 F.2d 809, 813 (6th Cir. 1980). Simply put, this unexplained lapse of time fosters significant doubt that any irreparable injury will occur here.

The papers in opposition also clearly reveal (as hereinabove mentioned) that the Oneida County Department of Social Services was willing to accept repayment of the funds over a nine month period—payments which would represent only 5% of the Facility's monthly operating revenues—not an 85% reduction in revenues as respondents assert. *See* Affidavit, Emanuel Birnbaum, verified July 14, 1982, par. 11. Here too the unaddressed issue of the impact of a 5% reduction in monthly operating revenues certainly fails further to support the conclusion that the granting of the extraordinary relief sought herein is warranted.

Accordingly, we are constrained to, and do, grant the motion to dismiss in all respects.