**Bessie M. BERRY, Plaintiff,**

**v.**

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, et al., Defendants.**

**No. 92 Civ. 4240 (CBM).**

United States District Court, S.D. New York.

Dec. 18, 1992.

Matthew D. Clayton, Clayton & Assoc., Philadelphia, PA, for plaintiff.

Robert Abrams, Atty. Gen. (June Duffy, Mary E. Oleske, Asst. Atty. Gen., of counsel), New York City, for defendants.

OPINION

MOTLEY, District Judge.

## I. BACKGROUND

The pleadings in this case allege a widespread conspiracy and pattern of civil rights violations against the plaintiff, an African–American ex-employee of the Elmira Correctional and Reception Facility. The complaint alleges, in essence, various forms of employment and other kinds of discrimination, as well as a cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq.

The plaintiff is a middle-aged African–American woman living in Elmira, New York. The actions complained of occurred while she was employed as a Corrections Counselor and Inmate Prison Placement Coordinator at the Elmira Correctional and Reception Center. Plaintiff has long been active in civil rights causes, and at one time was president of the local NAACP chapter.

The complaint merely alleges, in a conclusory fashion, that venue is proper under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) without stating the reasons why. The plaintiff and the facility are both located in Elmira, which is in the Western District of New York. Certain of the state agency defendants have a branch office in the Southern District of New York, but they are all headquartered in Albany, in the Northern District of New York, and all the acts complained of took place in the Western District. One of the individual defendants (all of whom, as indicated in the complaint, are sued both in their individual and official capacities) has since retired and is now living in the Southern District. The Attorney General has moved for a change of venue to either the Western or the Northern District under 28 U.S.C. § 112(a) and 28 U.S.C. § 1391(b) on the grounds that venue is improperly laid in the Southern District, or alternatively, for a forum non conveniens transfer under 28 U.S.C. § 1404(a).

## II. THE ATTORNEY GENERAL'S ARGUMENT

The Government contends that venue properly lies elsewhere, as the parties do

not reside within the Southern District. Plaintiff, and the Elmira facility are both located within the Western District. The central offices of the state agency defendants, the Department of Correctional Services, the Department of Civil Service and the Department of Audit and Control are all located in Albany which lies within the Northern District. Of the individual defendants, they all reside in either the Western or the Northern District except for Donald McLaughlin, one of the ex-supervisors of the Elmira facility until 1987, who is since retired and now lives in the Southern District. However, at the time of the actions complained of he resided in the Western District.

Additionally, defendants argue that for purposes of a suit against an official acting in his official capacity, his residence for venue purposes is considered to be his place of work, not their place of home residence.

Under § 1404(a), defendants contend, venue should be changed since it would serve the interests of justice and be more convenient to try the matter in the Western or the Northern District since that is where most of the defendants and the plaintiff are located and since most of the relevant records would be found there.

## III. PLAINTIFF'S CONTENTIONS

Plaintiff argues that venue is proper in the Southern District since defendant McLaughlin now lives here and since plaintiff's choice of venue should be given deference.

The central focus, however, of plaintiff's desire to try the case in the Southern District, is the stated fear that because of pervasive and systemic racism in the Northern and the Western Districts, it is impossible for the plaintiff to "receive a fair trial" there. Plaintiff argues that the jurors would either be friends, spouses, or neighbors of the defendants if the action were tried in the Western District or if it were tried in the Northern District, the

jurors would be biased since they live in an area near to the seat of the state government and, thus, they would be biased in favor of the government defendants. Also, because of racism in the Western and the Northern Districts, plaintiff would be too terrified to testify in those jurisdictions as would potential witnesses (who remain unnamed in the pleadings).[1]

Plaintiff also argues that some former prisoners of the Elmira facility who would testify at trial now live within the Southern or Eastern District and thus that it would be more convenient for the witnesses if the trial were held here. They do not, however, supply any of the names of these potential witnesses. It is also argued that Manhattan's central location would make it convenient to try the case here.

Plaintiff additionally contends that under Civil RICO, 18 U.S.C. § 1965(a), venue is proper wherever any defendant resides or does business or in any venue where the interests of justice so require suit to be brought.

## IV. ANALYSIS

### A. 28 U.S.C. § 1391(b)(1)

■ 28 U.S.C. § 1391(b)(1) allows non-diverse federal question suits to be brought in a "judicial district where any defendant resides, if all defendants reside in the same State." Thus defendant McLaughlin's current residence in the Southern District is the jurisdictional hook utilized by plaintiff. However, given the nature of the suit, defendants are correct in noting that for the purposes of venue McLaughlin's residence should be considered to be the district where he performed his duties. See *Birnbaum v. Blum*, 546 F.Supp. 1363 (S.D.N.Y. 1982).

"It is settled law that under § 1391 the 'residence' of public officers such as these defendants means his or her 'official' and not 'actual' residence." *Canaday v. Koch*, 598 F.Supp. 1139, 1143 (E.D.N.Y.1984) (citing *Birnbaum v. Blum*, 546 F.Supp. 1363,

---

**1.** It is also probable that one reason why plaintiff's attorney prefers the Southern District is that he practices in Philadelphia, and that for him the commute to Manhattan would be far simpler than to the federal courts in either the Northern or Western Districts.

1366 (S.D.N.Y.1982). While the complaint, as worded by the plaintiff, is against McLaughlin in his official and individual capacity, it is apparent that he is being sued for acts done while he was a state agent. At the time of the events sued upon, McLaughlin was the Superintendent of Program Services of the Department of Correctional Services whose office was located in the Northern District in Albany. He is apparently being sued for failing as an officer of the state to prevent the acts of which plaintiff complains. The complaint states that McLaughlin is being sued "in his individual capacity and as an employee of the New York State Department of Correctional Services." (Complaint at 9). See also 34–35, which in listing the acts McLaughlin is accused of indicates that all of them were taken in his official capacity. McLaughlin left his employment around February of 1987 (Complaint at 35). Furthermore, as added by plaintiff's Memorandum of Law in Opposition to the Motion to transfer Venue, at all relevant times McLaughlin was "the supervisor in charge at Elmira Correctional Facility." Memorandum of Law in Opposition at 2. None of defendant's official activities eventuated in the Southern District, so venue here is improper, see *Boston Drugs v. Perales,* 747 F.Supp. 873, 874 (E.D.N.Y.1990).

Instructive is the holding in *Procario v. Ambach,* which held that the residence of officers of a New York State agency (there the Department of Education) is their official residence and, that therefore, venue was proper only in Albany in the Northern District, even though the Department had subsidiary offices in New York City because the "[r]esidence of officials for the purpose of venue shall be deemed to be official residence." *Procario v. Ambach,* 466 F.Supp. 452, 453–454 (S.D.N.Y.1979). The *Procario* court noted additionally that the claim that "to compel suit at the place of official residence might result in unfairness, in that all civil rights suits will be diverted to hostile state capitals," does not compel the conclusion that venue was proper elsewhere; only if the claim arose elsewhere would suit lie in a district other than that of defendant's official residence.

Here, that rule would allow suit only in the Northern District, where the state defendants' agencies were headquartered, or in the Western District, where Elmira is situated. *Procario,* 466 F.Supp. at 454.

■ While a state defendant may have more than one official residence due to having branch offices where substantial amounts of official business are conducted, *Cheeseman v. Carey,* 485 F.Supp. 203, 207 (S.D.N.Y.1980), their residence for purposes of 1391(b) is one of these official residences. In this case the only relevant official offices in question are either located in the Western or the Northern Districts. The mere fact that the State, the ostensible defendant, has offices and employees all around the state, is legally irrelevant for the purposes of venue, since here the state is not being sued for activities that occurred outside of the Northern or the Western District.

Plaintiff did not address this definition of residence as situs of the official activity at all. It was completely ignored in her papers. Instead, oddly enough, plaintiff claims on the first page of her Memorandum of Law in Opposition that defendants admit that venue in the Southern District is proper. This court is unable to find such an admission anywhere in the Government's papers. Plaintiff, it appears, has elected to treat the instant motion solely as one under § 1404(a) to transfer venue on the grounds of forum non conveniens.

**B.  28 U.S.C. § 1404(a): Forum non conveniens**

Plaintiffs challenge the racism of the state, and allege that the state's regime is racist; in her words, terroristic in its harassment of plaintiff. However, the case is not in state court but in federal court. One of the reasons why civil rights suits are brought in federal court is precisely to escape the problem of suing the state in its own courts. Thus plaintiff's claim that the interests of justice compel that the action be brought in the Southern District is less persuasive than if the case were to be tried in the state court system.

Even assuming, arguendo, that systemic racism in the Western or the Northern District may make it harder to pick a less racist jury, the function of voir dire is to minimalize the problem of biased jurors. The plaintiff has not presented any evidence that it would be impossible or even difficult to choose a racially unbiased jury in the Western or Northern District. Instead, plaintiff has merely conclusorily alleged that it would be impossible to have a fair hearing outside the Southern District. In any event, plaintiff has not demonstrated that her interests would be prejudiced by a bench trial. Also, as recent unfortunate events in New York City indicate, the optimistic belief that racism and racial tensions are less of a problem in the Southern District than elsewhere in the State may be unwarranted.

It is difficult to fathom how plaintiff and her witnesses would possibly escape the wrath of racist members of the Elmira community merely by holding the trial in the Southern District. Presumably, it is the awareness of the trial which would lead to the racist backlash that plaintiff fears, not the locus of the trial. Plaintiff has neither presented evidence, nor is it likely that she could do so that would indicate that holding the trial in the Southern District would somehow prevent news of the testimony from becoming known. At the very least, the defendants, the very parties which are now accused of horrendous racist actions, would be aware of every word spoken and all evidence presented as they would be parties to the action.

Defendants also point to a recent class action suit involving the Elmira facility in question in which the Western District did find pervasive and extreme patterns of racism operating in the New York State prison system, indicating that plaintiff's claims can get a fair reception in that District. *Santiago v. Miles*, 774 F.Supp. 775 (W.D.N.Y.1991). Indeed, that case shared some of the same defendants as the case at bar. Plaintiff attempted to distinguish that case, arguing that it involved "hard core, convicted felons" while plaintiff is "a dedicated, loyal public servant." See Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion, at 3. This difference, however, argues on behalf of defendant; after all, if the plaintiffs in *Santiago* can receive a fair hearing, then the plaintiff's chances here are that much greater given her higher status and prestige.

The movant bears the burden of demonstrating the desirability of transfer and plaintiff's choice of forum is entitled to deference. The factors to be considered involve: (a) convenience to parties; (b) convenience to witnesses; (c) relative ease of access to sources; (d) availability of process to compel attendance of unwilling witnesses; (e) cost of obtaining willing witnesses, (f) the cost of trying the case expeditiously and cheaply; and (g) the interests of justice. See, e.g. *Brierwood Shoe Corp. v. Sears Roebuck*, 479 F.Supp. 563, 565 (S.D.N.Y.1979).

Under this analysis, it appears that the Attorney General has good reasons for wanting the case transferred, reasons that compel this court as well. Even assuming venue is proper in the Southern District, trial elsewhere would be far more convenient for parties and witnesses. It would also facilitate greatly the discovery process, since the great majority of relevant evidence is most likely located in the Northern or the Western District. While it may be more difficult for plaintiff's counsel, an attorney based in Philadelphia, Pennsylvania, to attend proceedings in the Western or Northern District, this inconvenience is accorded little weight under federal law. See, e.g. *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 988 (E.D.N.Y.1991); *Babbidge v. Apex Oil Co.*, 676 F.Supp. 517, 522 (S.D.N.Y.1987).

In any event, a transfer under 28 U.S.C. § 1404(a) is permissible only, according to the relevant statutory language, "to any other district or division where it might have been brought" initially. Thus, for the suit to be tried in the Southern District venue must first be proper herein under § 1391(b)(1), which, in light of the analysis above, this court finds not to be the case.

C.  18 U.S.C. § 1965(a):

■ § 1965(a) allows a civil RICO suit to be filed against any person "in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  The only jurisdictional basis this section provides is if McLaughlin is "found" in the meaning of the statute in the Southern District, since for the purposes of venue his residence, since he is a state official, was in the Western District and he has no agent and transacts no affairs in the Southern District which would give rise to venue in that district.  In *Sunray Enterprises v. David C. Bouza & Assoc.*, 606 F.Supp. 116, 119 (S.D.N.Y.1984) the court noted that to be "found" under this section demands more than mere occasional physical presence:  some acts relevant to the RICO claim must have occurred in the venue sought by plaintiff, some kind of business must have been conducted.  Given this analysis, plaintiff cannot claim that McLaughlin is "found" in the Southern District.  In addition, none of the other state defendants can be justifiably said to reside, be found, or transact business in the Southern District.  The mere fact that the State of New York has some agencies in the Southern District is insufficient to confer venue; after all, the State has representatives in other states, as well as foreign nations.  The mere fact that a state may have, for example, a bureau of tourism or industry in Utah, or even Japan, is insufficient to make those locales fit venue for a civil suit where a regional arm of the State is being sued for activities which took place entirely outside the venue sought.

■ The RICO claim is too poorly pleaded in any event to provide a sufficient basis for conferring venue on this court.  For example, it appears from the Complaint, 32–45, that since the defendants are identified as the criminal enterprise, the RICO complaint fails to state a cause of action, as RICO requires "conduct through" an enterprise and, therefore, for a RICO complaint to be well-pled, the defendant and the enterprise must be distinct.  *U.S. v. Gelb*, 881 F.2d 1155, 1164 (2d Cir.1989), cert. den., 493

U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989).  *Bennett v. United States Trust Company of New York*, 770 F.2d 308, 315 (2d Cir.1985), cert. den. 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986);  *Cullen v. Margiotta*, 811 F.2d 698, 729 (2d Cir.1987), cert. den. sub. nom. *Nassau County Republican Committee v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).  Here, the association-in-fact that is alleged to be the racketeering enterprise is identified as the defendants as well.  See Complaint, 32–33.

■ Additionally, it appears doubtful that defendants have committed the necessary predicate acts for RICO to apply.  The complaint alleges job discrimination and some pendant state law tort claims (e.g. false imprisonment, slander, etc);  these are not included in the predicate acts listed in § 1961(1).  Civil rights suits are not convertible to RICO merely because the plaintiff desires treble damages.

■ The only possible RICO violation is mail fraud.  Plaintiff claims that defendants tampered with the U.S. Mails in having mail addressed to plaintiff's home somehow rerouted to the Elmira prison facility.  Such fraud must be pleaded with particularity, a particularity lacking here.  In any event, this is not a case involving use of the mails in the sense contemplated by current interpretation of the mail fraud statutes.  "To be guilty of mail fraud under 18 U.S.C. § 1341 defendants must have used the mail as a means to obtain 'money or property by means of false or fraudulent pretenses, representations, or promises' for purposes of executing a scheme to defraud."  *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990).  Interference with the mails is not mail fraud: it is a different offense, one for which there is no private cause of action.

Also, the doctrine of forum non conveniens applies to RICO actions.  *Transunion Corp. v. Pepsico*, 811 F.2d 127, 129–130 (2d Cir.1987).  Here, the only contact with the Southern District is the fact that years after all of the events complained of transpired, one defendant out of many retired

to this district. This is not a sufficient nexus to confer venue on this court.

### V. CONCLUSION

Defendant's motion is granted, and the action ordered transferred to the Western District. A further reason for granting the defendant's motion is the preference that disputes be adjudicated in the localities in which they arose. Unfortunately, the racist and discriminatory actions which plaintiff claims were perpetrated against her are still features of the American landscape, and if they are to be eradicated these battles must be fought in the places where the actions complained of occurred. A lawsuit such as the instant one is about more than one plaintiff's search for redress; when a party seeks to vindicate a civil rights suit they are fighting not only for themselves but for the society-at-large. Thus, it is appropriate that these battles take place as close as possible to the area where the events complained of arose so that they can serve as an example to educate that community. For all these reasons, defendant's motion is granted.