**Diego J. HERBSTEIN, Plaintiff,**

v.

**Martin E. BRUETMAN, High Tech Medical Parks Development Corp., Ronald Tash, Douglas Keill, Mauricio Agudelo and Alta Tecnologia Medica, S.A., Defendants.**

**No. 89 Civ. 6864 (RWS).**

United States District Court,
S.D. New York.

June 28, 1991.

See also 743 F.Supp. 184.

Carro, Spanbock, Kaster & Cuiffo (Ronald E. DePetris, of counsel), New York City, for plaintiff.

Bell & McGurk, Ltd. (James A. McGurk, of counsel), Chicago, Ill., for defendant Alta Tecnologia Medica, S.A.

Baer Marks & Upham (Barry J. Mandel, Peter E. Cooper, of counsel), New York City, for defendants.

OPINION

SWEET, District Judge.

Defendant Alta Tecnologia Medica S.A. ("Altec–2") has moved pursuant to Rule 12(b)(2), Fed.R.Civ.P., for an order dismissing the complaint in this RICO action for

lack of personal jurisdiction. For the reasons set forth below, the motion is denied.

*The Parties*

Plaintiff Diego Herbstein ("Herbstein"), a medical doctor, is a citizen of Argentina but currently a permanent United States resident domiciled in the State of New York. Herbstein is an officer, director, and 50% shareholder in Imagenes Por Computacion ("IxC"). He is also listed as a director and 8% shareholder of Altec–2.

Altec–2 is an Argentine corporation with its headquarters in Buenos Aires, Argentina engaged in the development of diagnostic centers in Argentina and other countries in South America.

Defendant Martin Bruetman ("Bruetman"), a medical doctor, is a citizen and a resident of Illinois. He is a member of the board of directors of Altec–2. He is president and chief executive officer of IxC and also serves as chairman of its board of directors.

Defendant High Tech Medical Parks Development Corp. ("High Tech") is an Illinois corporation with its principal place of business in Illinois. High Tech specializes in the scientific and technical advising of medical establishments. It also owns 49% of Altec stock.

Defendant Ronald Tash ("Tash") is a citizen of Illinois and is a 12.25% shareholder in High Tech. Tash also serves as secretary and legal counsel for High Tech.

Defendant Douglas Kiell is a citizen of Connecticut, and at all relevant times, owned 12.25% of High Tech stock. Until January 1989, he was the president and chief financial officer of High Tech.

The defendants are referred to collectively as the "Bruetman Defendants."

*Prior Proceedings*

In 1989, Herbstein initiated a civil suit in Argentina against Bruetman and Amerigo Pescio ("Pescio"). At approximately the same time, Bruetman brought a suit on behalf of himself and IxC, requesting an investigation of several people, including Herbstein. The proceedings in the above action are set forth in this court's opinion of July 11, 1990 (the "Opinion").

On October 16, 1989, Herbstein filed his complaint in the Southern District of New York seeking damages for fraud racketeering, conversion, and breach of fiduciary duty. On January 17, 1990, the Bruetman Defendants filed a motion to dismiss Herbstein's case on the grounds of comity or *forum non conveniens*, or alternatively, to stay the case until the resolution of the proceedings in Argentina. The Opinion of July 11, 1990 denied the motion.

In an order of October 30, 1990, the court dismissed the action without prejudice for failure to prosecute. On November 1, 1990, the court issued an order vacating the dismissal and reinstating the case.

On January 10, 1991, Altec–2 moved to dismiss the complaint as against itself for lack of personal jurisdiction. Oral argument was heard on March 8, 1991 and the motion was considered submitted as of that date.

*The Facts*

For the purposes of the instant motion to dismiss, the facts are assumed to be as alleged by Herbstein. *Dwyer v. Regan*, 777 F.2d 825, 827 (2d Cir.1985).

This action arises out of a pattern of alleged fraudulent activity in which the defendants obtained approximately $447,000 from Herbstein in New York and attempted to divest him of his interest in IxC, a business that operates a medical diagnostic center in Argentina.

Until mid–1988, Bruetman was a 50% shareholder in IxC. At that time he transferred all his shares in IxC to Altec–2. Bruetman remained president and chief executive officer of IxC and chairman of its board of directors.

Bruetman is chairman of the board of High Tech and owns 51% of the shares in High Tech. Bruetman's son owns another 43% of the shares of High Tech. Herbstein owns the remaining shares of High Tech.

Bruetman controls and is a director of Altec–2. Altec–2 has no employees located in the United States. Altec–2 neither sells products nor performs services in the United States.

The complaint describes three phases of the pattern of alleged fraudulent activity: (1) the obtaining of sums of money from Herbstein as a result of Bruetman's fraudulent representations with respect to the capital contributions to and proposed formation of IxC and its predecessor; (2) the Bruetman Defendants' fraudulent misappropriations and transfers of money from IxC; and (3) the Bruetman Defendants' fraudulent scheme to divest Herbstein of his financial and ownership interests in IxC.

In July, 1988, Bruetman and High Tech instructed the president of Altec–2 to transfer $24,000 to the account of High Tech at Boulevard bank, and further instructed him to enter that amount in the books as "repayment of debt from [IxC] to High Tech" when no such debt existed and no such payment had been authorized by the director of IxC.

On August 16, 1988, Bruetman, High Tech and Altec–2 caused to be transmitted by wire from Illinois to Herbstein in New York a letter asking Herbstein to divest himself of his half ownership in IxC.

On December 16, 1988, Bruetman, Tash, Altec–2 and High Tech caused to be transmitted by wire from Illinois to Herbstein in New York a memorandum written by the president of Altec–2 to the board of directors concerning the negotiation of the sale of the shares of IxC held by Altec–2.

On or about January 18, 1989 Bruetman, High Tech, and Altec–2 caused to be transmitted by wire from Illinois to Herbstein in New York an accounting which allegedly fraudulently attributed to IxC expenses and debts that had nothing to do with IxC, but related solely to the business of High Tech and Altec–2.

On July 12, 1989 Bruetman, Tash, High Tech and Altec–2 caused a letter signed by Tash and addressed to the new accountants for IxC to be mailed from Illinois to Herbstein in New York and to the accountants in Buenos Aires, which contained allegedly false statements.

Process was served on Altec–2 by means of service upon its director, Bruetman, in Illinois.

## Discussion

On a motion to dismiss pursuant to Rule 12(b)(2), Fed.R.Civ.P., all pleadings and affidavits are construed in the light most favorable to the plaintiffs, and all doubts are to be resolved in the plaintiff's favor. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). To withstand a 12(b)(2) motion to dismiss, a plaintiff need only make out a *prima facie* case of personal jurisdiction. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 768 (2d Cir.1983).

The complaint invokes federal question jurisdiction pursuant to the civil RICO statute, which authorizes national service of process. 18 U.S.C. § 1965. When a complaint invokes federal question jurisdiction under a statute providing for nationwide service of process, the jurisdictional inquiry focuses on the defendant's contacts with the entire United States, not just the forum state. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974). Therefore, due process requires only that a defendant in such a suit have minimum contacts with the United States. *Perez–Rubio v. Wyckoff*, 718 F.Supp. 217, 228 (S.D.N.Y.1989) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

Under the due process clause, personal jurisdiction may be asserted over an individual who is not present where the defendant is (1) doing business in the state; (2) doing an act in the state; or (3) causing an effect in the state by an act done elsewhere. *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972). In an international context in particular, the third test must, however, be applied with caution. "The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him." *Id.* at 1341. It is not enough that causing an injury within the forum may be foreseeable, within the meaning of proximate causation and tort liability; rather, "the foreseeability that is critical to due process analysis ... is that

the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980).

■ For the purposes of the instant motion, the facts as alleged establish conduct and connection to the United States on the part of Altec–2 such that the corporation could reasonably anticipate being haled into court here. Construing the allegations in the complaint in the light most favorable to Herbstein, Altec–2 caused letters and other documents containing fraudulent statements to be mailed and transmitted by wire in the United States. Some of these communications concerned the purported negotiation of shares of IxC held by Altec–2. When Altec–2 undertook this allegedly fraudulent activity directed at a corporation in which it owned a half interest the other half of which was owned by a New York resident, it could reasonably anticipate being haled into court there. *See Perez–Rubio*, 718 F.Supp. at 231 (law firm involved in legal work for investment companies could reasonably anticipate being haled into court in the United States where at least some of the beneficial owners were residents of the United States).

Furthermore, the RICO claim arises out of and directly relates to the contacts alleged as the basis for personal jurisdiction: the allegedly fraudulent mail and wire communications. The instant case is therefore distinguishable from *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), cited by Altec–2 for the proposition that a defendant's purchases in the forum state are an insufficient basis for personal jurisdiction where such purchases or contacts do not relate to the causes of action alleged by a plaintiff. *See Helicopteros*, 466 U.S. at 414 & n. 8, 104 S.Ct. at 1872 & n. 8 (distinguishing between "general jurisdiction," where cause of action does not relate to the foreign corporations activities in the forum state, and "specific jurisdiction," where such a relationship exists).

Moreover, the conduct alleged in the instant case does not describe a situation where the occurrence of events in New York or in the United States was fortuitous. *See World–Wide Volkswagen*, 444 U.S. at 286, 100 S.Ct. at 561–62, (due process cause prohibits exercise of personal jurisdiction by Oklahoma long arm statute over New York corporation in products liability action arising out of automobile accident in Oklahoma involving vehicle sold in New York to New York residents). *World–Wide Volkswagen*, cited by Altec–2 for the proposition that a court will not exercise personal jurisdiction where defendant sells no products nor maintains offices in forum states, is further distinguishable from the instant case as the RICO statute, unlike the cause of action in *World–Wide Volkswagen*, provides for national service of process. *See Mariash*, 496 F.2d at 1143.

Herbstein has therefore alleged conduct of Altec–2 sufficient to meet the minimum contacts standard required by due process.

*Conclusion*

For the reasons set forth above, Altec–2's motion is denied.

It is so ordered.