**PT UNITED CAN COMPANY LTD.,**
**Plaintiff–Appellant,**

v.

**CROWN CORK & SEAL COMPANY, INC., f/k/a Continental Can Company; Richard Krzyzanowski; John W. Conway, Defendants–Appellees.**

Docket No. 97–7252.

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1997.

Decided Feb. 25, 1998.

**68**

Leo F. McGinity, Jr. (Rieger & Walsh, LLP, Northport, NY), for Plaintiff–Appellant.

James E. Tolan, (Nancy Prahofer, and J. Kevin Fee, Dechert Price & Rhoads, New York City, on the brief), for Defendants–Appellees.

Before: JACOBS and LEVAL, Circuit Judges, and RESTANI *, Judge.

RESTANI, Judge:

Appellant PT United Can Company Ltd. ("UCC") appeals from a judgment entered in the United States District Court for the Southern District of New York, (Koeltl, *J.*), dismissing claims against individual defendants Richard Krzyzanowski and John W. Conway for lack of personal jurisdiction and dismissing claims against Crown Cork & Seal Company, Inc. ("Crown"), on *forum non conveniens* grounds. UCC appeals as of right, pursuant to Fed. R.App. P. 3 and 4(a), as the district court's judgment terminated this action against all defendants. We affirm the judgment of the district court as to all defendants.

## BACKGROUND

This appeal arises out of a dispute between UCC and UCC minority shareholder Crown. UCC is an Indonesian corporation with dominant market share in the South Asian metal packaging industry. UCC stock is held by UCC President R.Z. Shang, Davlyn Steel Co., Toyo Seikan Kaishah, Ltd. ("Toyo"), a Japanese corporation, and by Crown, a Pennsylvania corporation. Crown's minority

interest in UCC was originally held by Continental Can Corporation, subsequently referred to as Continental Can International Corporation, ("CCIC") and was transferred to Crown when Crown acquired CCIC in 1990. Individual defendant Richard Krzyzanowski is General Counsel to Crown and a citizen of New Jersey. Former CCIC President, defendant John W. Conway, is Executive Vice President of Crown and a citizen of Pennsylvania.

In February 1977, UCC, CCIC, and Toyo executed a Memorandum Agreement ("Shareholders' Agreement") in Tokyo, setting forth mutual covenants regarding UCC stock ownership and transfer. The Shareholders' Agreement provided UCC a right of first refusal, at a price based on UCC's net worth, in the event that CCIC wished to sell, transfer, or otherwise dispose of its interest in UCC. The Shareholders' Agreement also guaranteed appraisal rights in the event that CCIC should consider its equity position in UCC adversely affected by various changes. Again, in this case, the repurchase price would be based on UCC's net worth. The Shareholders' Agreement was silent as to choice of law and venue.

In 1990, UCC issued a promissory note ("Note") to CCIC, specifying New York law for its construction and enforcement. This Note is not in dispute here.[1] A licensing agreement between UCC and CCIC also provided for construction in accordance with New York law and for arbitration of disputes in New York under the rules of the American Arbitration Association. Defendant John W. Conway was CCIC President at the time the licensing agreement was executed. After Crown acquired CCIC in 1991, Conway was made Executive Vice President of Crown. In December 1995, Crown offered to sell back its UCC shares for US$6 million. UCC's 1994 year-end net worth was negative, so UCC expected an unfunded (i.e.gratuitous) transfer of Crown's UCC shares, which Crown refused to do.

---

\* Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

1. UCC claims the Note was for the negotiated purchase of an automated two-piece can line.

Crown claims the Note reflected UCC debt to CCIC. An earlier dispute regarding the Note was resolved by settlement in 1994.

On April 24, 1996, UCC filed the action underlying this appeal in New York State Supreme Court, New York County. On May 16, 1996, all defendants removed the action to the United States District Court for the Southern District of New York on the basis of diversity jurisdiction. In district court, UCC alleged that Crown had used the position of UCC shareholder and co-venturer it had inherited from CCIC to obtain access to sensitive UCC financial and operations data. UCC further alleged that Crown, Conway, and Krzyzanowski used this position to engage in wrongful conduct, including extortion, mail and wire fraud, egregious trade disparagement, unfair competition, tort, and violation of 18 U.S.C. §§ 1951–1952. UCC also claimed that Crown's offer to sell back its UCC shares was irrevocable according to the terms of the Shareholders' Agreement. UCC therefore alleged breach of contract by Crown for failing to enact an unfunded transfer of its UCC shares.[2] In sum, UCC asserted four common law claims including breach of contract and breach of fiduciary duty against Crown alone and eight Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, 18 U.S.C. § 1961 *et seq.*, against all defendants.

On June 18, 1996, all defendants moved the district court to dismiss all of UCC's claims on *forum non conveniens* grounds. Individual defendants Conway and Krzyzanowski also moved the court to dismiss claims against them, pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), for lack of personal jurisdiction and improper venue. For the limited purpose of their motion to dismiss, the defendants conceded the allegations in UCC's complaint. By order of November 27, 1996, the district court asked the parties to respond, in writing, to six specific queries.[3] By opinion and order dated January 27, 1997, the district court granted the motion of Krzyzanowski and Conway for dismissal of the claims against them, without prejudice, based on lack of personal jurisdiction. The district court also granted Crown's motion to dismiss on *forum non conveniens* grounds, on the condition that Crown submit to suit in Indonesia. In view of the disposition of their jurisdictional motion, the individual defendants did not figure in the district court's analysis of the *forum non conveniens* factors. Nor did the district court rule on the individual defendants' motion to dismiss for improper venue.

**STANDARD OF REVIEW**

■ The standard of review on appeal differs as to the two issues raised. The first issue is whether the district court erred in dismissing the claims against the individual defendants for lack of personal jurisdiction. A district court's dismissal on jurisdictional grounds is reviewed by this court *de novo,* because the district court relied solely upon pleadings and affidavits, *see CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir.1986), and because UCC's appeal is limited to a question of law, *see Findley v. Falise*

**2.** Crown refers to its own theory of wrongdoing, that majority UCC shareholder Shang had attempted to freeze out Crown. Although Crown refers in its brief to potential cross-claims, to date, it has filed none. Crown also refers to ongoing litigation between itself and UCC in Indonesia. Crown lost its Indonesian tort suit against UCC for alleged failure to provide financial statements to its stockholders and has appealed. In an action to compel disclosure to a minority shareholder, Crown has also secured an Indonesian court order for an independent audit of UCC's 1989–1994 balance sheets.

**3.** The six questions were:
1) What cause(s) of action, that can be asserted in an Indonesian court, are most analogous to the plaintiff's claims under RICO?
2) What forum's law governs the causes of action already asserted in the lawsuit, and what law would govern any causes of action that would be brought in Indonesia as analogous to the RICO claims?
3) What provisions are there for Indonesian courts to compel the production of foreign witnesses and documents? How would the exchange of documents for discovery be conducted under Indonesian law? In answering these question[s], the parties should specify the effect that Indonesia not being a signatory to the Hague Convention has on their answers.
4) How would judgments against any of the parties be enforced, whether those judgments were issued in Indonesia or in the United States?
5) Defendant Crown, Cork & Seal Company, Inc. should confirm in writing that it consents to the jurisdiction of the Indonesian courts.
6) The parties should state the current status of the proceedings in the Indonesian courts.

(*In re Joint Eastern & Southern District Asbestos Litigation*); 78 F.3d 764, 775 (2d Cir.1996), the meaning of 18 U.S.C. § 1965 (1994).

■ This court's appellate review of the *forum non conveniens* issue is more circumscribed. The district court's decision to dismiss the claims against Crown on this ground was a matter of judicial discretion. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996). Appellate review of this decision is "extremely limited." *Id.* A district court's decision should be reversed only upon a showing of a clear abuse of discretion. *Id.*

## DISCUSSION

### I. Personal Jurisdiction

The district court dismissed UCC's claims against individual defendants Conway and Krzyzanowski, based on its reading of 18 U.S.C. § 1965. UCC challenges this reading on appeal. Section 1965 provides, in relevant part,

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that *the ends of justice require* that *other parties* residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas issued by such court to compel the attendance of witnesses may be served in any other judicial district. . . .

(d) All *other process* in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965 (1994) (emphasis added).

Relying on the interpretation of the statute in *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538–39 (9th Cir.1986), the district court held that § 1965(b), and not § 1965(d), governs the exercise of personal jurisdiction under RICO.[4] Section 1965(b) would apply, permitting nationwide service of process, so as to give the court jurisdiction over the individual defendants, only if the ends of justice required, which would be unlikely given that all three defendants were subject to suit in Pennsylvania. UCC challenges this interpretation on appeal, arguing for a narrow reading of *Butcher's Union*, in which § 1965(d) was not addressed directly, and arguing further that the correct reading of § 1965 is that subsection (d) is a jurisdiction provision and subsection (b) a venue provision. Following briefing in this appeal, another circuit court stated in conclusory terms that § 1965(d) provides for nationwide service of process. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.1997)(§ 1965(d) provides nationwide jurisdiction over RICO defendants). Thus, there is now an apparent conflict in circuits on this issue, which is one of first impression here.

The parties agree with the district court that § 1965 must be read to give effect to all its sections in a way that renders a coherent whole, but they present competing, unified interpretations. UCC argues that § 1965(d) provides for nationwide service of process in all RICO cases, and that § 1965(b) provides for service of third-party and counter-claim defendants. The appellees, by contrast, agree with the district court that a court may only exercise nationwide jurisdiction when the "ends of justice require," as determined by § 1965(b), which appellees understand to

---

**4.** UCC does not challenge the district court's holding that § 1965(b) authorizes nationwide service of process only when the ends of justice require, nor the court's finding that the ends of justice did not authorize the use of nationwide service to summon Krzyzanowski and Conway.

be the personal jurisdiction provision of § 1965.

UCC reads § 1965 to provide for nationwide service of process, and thus personal jurisdiction, in all RICO cases, based on the wording of § 1965(d). UCC argues that § 1965(d) must provide nationwide service for defendants, because there is no reference to the court's role as to service, while subsection (b) does refer to the court. The appellees suggest the distinction is spurious because all process occurs under the auspices of the court. The appellees counter that (b) is the subsection providing for nationwide service of defendants because of its specific reference to actions "under section 1964." The court does not find either of these differences to meaningfully distinguish the subsections by their differing roles in effecting a coherent jurisdictional scheme. Further, the legislative history of § 1965 is unenlightening; it simply restates the language of the statute. H.R.Rep. No. 91–1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4034.

As noted, one circuit court has stated that § 1965(d) provides nationwide service of process, and district courts within this and other circuits have found a basis for nationwide service in RICO cases under § 1965(d). In *Deem v. Lockheed Corp.,* 749 F.Supp. 1230, 1234 (S.D.N.Y.1989), the court interpreted § 1965(d) to authorize nationwide service of process on defendants. *See also Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 228 (S.D.N.Y.1989)(under RICO, jurisdictional inquiry focuses on defendant's contacts with the United States as a whole); *United States v. International Bhd. of Teamsters,* 708 F.Supp. 1388, 1402 (S.D.N.Y.1989). Courts treating both sections have specifically identified § 1965(d), not (b), as authorizing nationwide service on defendants. *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1055 & n. 10 (S.D.N.Y.1987) (noting that § 1965(b) is a venue provision,

which is not to be confused with § 1965(d), which is a jurisdiction provision); *Soltex Polymer Corp. v. Fortex Indus., Inc.,* 590 F.Supp. 1453, 1458–58 (E.D.N.Y.1984) (§ 1965(b) applies to additional counterclaim defendants). Despite this authority, we affirm the district court's interpretation of § 1965, based on our own reading of the statute.

Section 1965 makes sense only if all of its subsections are read together. Neither the district court's opinion nor the briefing of the parties discusses § 1965(a) and (c), but we find these sections to be equally important to a coherent understanding of the meaning and functioning of the statute, particularly for the purpose of interpreting the terms "other parties" and "other process" in §§ 1965(b) and (d), respectively.

█ Reading all of the subsections of § 1965 together, the court finds that § 1965 does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found. First, § 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.

█ Second, § 1965(b) provides for nationwide service and jurisdiction over "other parties" not residing in the district, who may be additional defendants of any kind, including co-defendants, third party defendants, or additional counter-claim defendants. This jurisdiction is not automatic but requires a showing that the "ends of justice" so require.[5] This is an unsurprising limitation. There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first

---

**5.** As indicated, the statute does not specify what "the ends of justice" are, but, as indicated, UCC does not challenge the district court's finding that the ends of justice do not in this case require § 1965(b) jurisdiction over the individual defendants. The district court followed *Butcher's Union,* 788 F.2d at 538–39, in finding "the ends of justice" to refer to a case in which there is no

district with personal jurisdiction over all defendants. Because the individual defendants work in Pennsylvania for Pennsylvania corporation Crown, the district court found that the ends of justice did not require personal jurisdiction over the individual defendants in New York under § 1965(b).

preference, as set forth in § 1965(a), is to bring the action where suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora.

■ Next, § 1965(c) simply refers to service of subpoenas on witnesses. Thus, § 1965(d)'s reference to "[a]ll other process," means process other than a summons of a defendant or subpoena of a witness. This interpretation, one which gives meaning to the word "other" by reading sequentially to understand "other" as meaning "different from that already stated in subsections (a)-(c)," gives coherent effect to all sections of § 1965, and effectively provides for all eventualities without rendering any of the sections duplicative, without impeding RICO actions and without unnecessarily burdening parties. We conclude that the natural reading given to § 1965(b) by the 9th Circuit in *Butcher's Union* and the district court here was correct, and that this conclusion is borne out by a complete reading of the statute, a course of action which has not been followed by the courts that have read § 1965(d) in isolation to reach the opposite conclusion.

## II. Venue

The district court did not rule on the individual defendants' motion to dismiss for improper venue because it dismissed the claims against the individual defendants for lack of personal jurisdiction. UCC argues that the defendants "waived" venue, or fixed it as a matter of law, through removal to federal court, citing *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665–66, 73 S.Ct. 900, 902–03, 97 L.Ed. 1331 (1953); *Bacik v. Peek,* 888 F.Supp. 1405, 1413 (N.D.Ohio 1993); and *Hartford Fire Insurance Co. v. Westinghouse Electric Corp.,* 725 F.Supp. 317, 320 (S.D.Miss.1989). Like the district court, we do not need to reach the venue issue as to the individual defendants, but we address the issue as background to the *forum non conveniens* issue affecting the corporate defendant.

■ The law on post-removal venue challenges involves two related questions with opposite answers, lending some confusion to the issue. The first question is whether a party may challenge the propriety of venue in the particular federal court to which a case has been removed. The answer is that the removal statute provides that venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (1994). Moreover, the removal statute, and not the ordinary federal venue statute, 28 U.S.C.A. § 1391 (West Supp.1997), governs venue in removed cases. *Polizzi,* 345 U.S. at 665–66, 73 S.Ct. at 902–03. Thus, a party may challenge removal as itself improper, or as having been made to the wrong district court if the case was removed to a district court other than that "embracing" the state court in which the action was brought, but one may not challenge venue in the district court as of right, according to that district court's venue rules, as if the case had originally been brought there. *See id.* A party may nonetheless request a discretionary transfer to a more convenient district court forum under the transfer provision. 28 U.S.C. § 1404(b) (1994).

■ The second question is whether a defendant who has removed a case to federal court may challenge the propriety of venue in the state court, or whether that right has been waived by removal. The answer to this question is different, but equally clear. A party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action. *Moss v. Atlantic Coast Line R.R. Co.,* 157 F.2d 1005, 1006 (2d Cir.1946) (A "defendant is not precluded from having the suit dismissed because its motion to remove was in any sense the waiver of a right, for it has waived nothing by taking that action"); *Greenberg v. Giannini,* 140 F.2d 550, 553 (2d Cir.1944). Although federal jurisdiction in a removed action is original, not appellate, and should proceed as though commenced in federal court, *Freeman v. Bee Machine Co.,* 319 U.S. 448, 452, 63 S.Ct. 1146, 1148–49, 87 L.Ed. 1509 (1943),

[w]here a state court lacks jurisdiction of the subject matter or of the parties, the

federal District Court acquires none on a removal of the case. . . . That is true even where the federal court would have jurisdiction if the suit were brought there.

*Id.* at 449, 63 S.Ct. at 1147 (citations omitted); *see also Arizona v. Manypenny,* 451 U.S. 232, 243 n. 17, 101 S.Ct. 1657, 1665 n. 17, 68 L.Ed.2d 58 (1981) (federal removal jurisdiction derivative; district court does not obtain jurisdiction "upon removal, even though the federal court would have had jurisdiction if the suit had originated there"). Lest any confusion remain, Learned Hand further explains:

> At times courts have indeed spoken as though removal to a federal court "waived" some defect of venue. . . . When a defendant removes an action from a state court in which he has been sued, he consents to nothing and "waives" nothing; he is exercising a privilege unconditionally conferred by statute, and, since the district court to which he must remove it is fixed by law, he has no choice, without which there can be no "waiver."

*Greenberg,* 140 F.2d at 553 (citations omitted). Because the " 'jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction,' " any defect in jurisdiction or process present in the state suit may be asserted in the district court. *Freeman,* 319 U.S. at 449, 451, 63 S.Ct. at 1147, 1147–48 (quoting *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922) (Brandeis, J.)).

■ *Polizzi,* on the other hand, stands for the limited proposition that the removal statute, 28 U.S.C. § 1441(a), rather than the federal venue statute, 28 U.S.C. § 1391, governs district court venue. 345 U.S. at 665–66, 73 S.Ct. at 902–03. *Hartford Fire* and *Bacik* are not binding precedent and an expansive reading of the language of those cases would conflict with *Greenberg.* UCC cites no case which authoritatively supports the proposition that removal waives challenges based on venue defects in the underlying state court action, or fixes venue in the district courts of the state of the original action as a matter of law. As venue is not fixed, *forum non conveniens* dismissals,

based on the availability of a "convenient" foreign venue, remain a possibility.

## III. *Forum Non Conveniens*

■ The doctrine of *forum non conveniens* permits a court to dismiss a claim even if the court is a *permissible* venue with proper jurisdiction over the claim. *Gulf Oil v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). Through a discretionary inquiry, the court determines where litigation will be most convenient and will serve the ends of justice. *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir. 1991). The inquiry focuses on three principal factors: the availability of an alternative forum, the private interests of the parties, and the public interest in forum selection. *Id.*

■ The *forum non conveniens* inquiry has two steps. First, in order to grant a motion to dismiss for *forum non conveniens,* a court must satisfy itself that the litigation may be conducted elsewhere against all defendants. *Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 981 (2d Cir. 1993). A forum is not inadequate even if the foreign justice system differs from that of the United States. *Id.* at 982. At this stage, considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards, *Flynn v. General Motors, Inc.,* 141 F.R.D. 5, 9 (E.D.N.Y. 1992), so such a finding is rare. *Blanco,* 997 F.2d at 982 ("[I]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.") (quoting *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 66 (2d Cir.1991)). If there is no adequate alternative forum, the inquiry ends, and the motion to dismiss is denied. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 255 n. 22, 70 L.Ed.2d 419 (1981).

■ If the existence of an adequate alternative forum is established, the court entertaining the motion must carefully consider all the private and public interest factors enumerated by the Supreme Court in *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843. The

private factors include the access to sources of proof, cost of obtaining willing witnesses, availability of compulsory process for unwilling witnesses, and other practical concerns. *Id.* at 508, 67 S.Ct. at 843; *R. Maganlal,* 942 F.2d at 168. The public factors are court congestion, interest of forums in deciding local disputes, and interest in issues of foreign law being decided by foreign tribunals. *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843; *R. Maganlal,* 942 F.2d at 168.

The defendant bears the burden to establish clearly each factor, *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43–44 (3d Cir.1988), and to demonstrate that the balance tilts strongly in favor of the purported alternative forum. *R. Maganlal,* 942 F.2d at 167. In general, a plaintiff's choice of forum is to be respected, but a non-U.S. plaintiff's choice warrants less deference. *Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996); *David Tunick, Inc. v. Kornfeld,* 813 F.Supp. 988, 992 (S.D.N.Y.1993).

**A. Alternative Forum**

UCC makes three arguments regarding the existence of an adequate alternative forum. First, UCC contends that the district court's examination of Indonesia as an adequate alternative forum was fundamentally flawed by the district court's omission of the individual defendants from that inquiry. Second, UCC argues that the unavailability of RICO claims under Indonesian law precludes the use of the Indonesian forum. Third, UCC claims the Indonesian court would lack personal jurisdiction.

UCC contends that the *forum non conveniens* analysis fails because the district court did not examine the adequacy of the alternate forum as to the individual defendants against whom it had dismissed all claims for lack of personal jurisdiction. This argument is unpersuasive. Once a court dismisses claims against a party for lack of personal jurisdiction, that party is no longer a defendant before that court. Moreover, the rule UCC suggests would be unworkable. If the court had to consider the motion to dismiss on the grounds of *forum non conveniens* as to all defendants, including those properly and concurrently dismissed for lack

of personal jurisdiction, a plaintiff could craftily preemptively defeat any such potential motion. For example, a Swedish plaintiff could bring an action in the Southern District of New York against a Swedish defendant and a California citizen with a known jurisdictional defect and no links to Sweden. If the court had to consider the adequacy of Sweden as an alternate forum as to all defendants, dismissed and non-dismissed, the Swedish plaintiff would likely, and absurdly, prevail, and a case between two Swedish parties would unnecessarily proceed in U.S. court.

The court proceeds to UCC's second alternative forum adequacy question. The availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum. *See Piper Aircraft,* 454 U.S. at 250, 102 S.Ct. at 263. Upon its inquiry, the district court determined that the causes of action that are available in an Indonesian court adequately address the underlying controversy expressed in plaintiff's complaint. Contrary to UCC's assertion, the nonexistence of a RICO statute there does not, by itself, preclude the use of another forum. *Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127, 130 (2d Cir.1987)(plaintiff's argument that RICO claims cannot be dismissed on *forum non conveniens* grounds "unpersuasive"; fraud action deemed an adequate substitute); *Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1144–45 (5th Cir.1989)(RICO's legislative history does not reveal intended immunity from *forum non conveniens*); *Berry v. New York State Dep't of Correctional Servs.,* 808 F.Supp. 1106, 1110 (S.D.N.Y.1992)(*forum non conveniens* doctrine applies to RICO actions). The district court does not appear to have inquired as to every particularity of Indonesian law, specifically omitting the question of the existence of *respondeat superior* and conspiracy theories under Indonesian law, but neither did it abuse its discretion in determining the alternative adequacy of fraud actions in tort. The district court was obliged to discern whether the laws enforceable in Indonesian courts were an adequate, not identical, alternative.

Turning to UCC's third concern, the court finds that any potential problem with

Indonesian personal jurisdiction as to all defendants was cured. While UCC suggests the Indonesian courts lack personal jurisdiction over the individual defendants, this argument is moot. As the court noted earlier, after the individual defendants are dismissed, they are no longer parties before the court. As to Crown, the district court conditioned the *forum non conveniens* dismissal on its consent to personal jurisdiction in Indonesia. A defendant may submit to the jurisdiction of an Indonesian court. *See Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1484 (9th Cir.1987).[6] Thus, the district court did not err by conditioning the dismissal on Crown's consent to personal jurisdiction in Indonesia and any potential jurisdictional problem is avoided.

**B. Discretionary Factors**

 Notwithstanding UCC's claim, the district court did consider all the factors set forth in *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843, even though the district court's view differed from UCC's as to the relative importance of each and the credibility of the evidence before the court. The court consulted Indonesian law experts as to Indonesian substantive law, Indonesian procedural rules, and jurisdiction in Indonesian courts. The court considered the location of documents and witnesses. The court compared the unavailability of process in Indonesia to compel witnesses or documents, either for Indonesian or foreign proceedings, with the possibility, under 28 U.S.C. § 1782, of gaining access to witnesses or documents in the United States. In particular, the court considered that a plaintiff uncooperative during discovery may have its case dismissed. The court also included in its inquiry the language of documents and the place of the alleged wrongdoing.

On appeal, UCC reargues the importance of each factor. Due to the careful and extensive inquiry undertaken by the district court and the narrow scope of appellate review on

this discretionary issue, the court will not disturb the conclusion of the district court.

## CONCLUSION

The court affirms the district court's dismissal of UCC's claims against individual defendants Conway and Krzyzanowski, in the entirety. The court also finds that the district court was correct in identifying Indonesia as an adequate alternate forum as to defendant Crown. The district court did not abuse its discretion in dismissing UCC's action, upon due consideration of the required public and private factors. As is often the case, on the record before it, the district court might have employed its discretion to rule either way on defendant Crown's *forum non conveniens* motion. The inquiry could reasonably have rendered either result. Precisely for that reason, this court will not disturb the district court's ruling on *forum non conveniens*.

**AFFIRMED.**

**6.** Defendants' Indonesian law expert claimed Indonesian courts would have personal jurisdiction over individual defendants because *plaintiff* UCC is an Indonesian corporation. Specifically, the expert noted that

[s]ince deed of the establishment and the Articles of Association of United Can Company Limited are governed by the Indonesian law and moreover, its head office and factory are

also located in Indonesia, in my opinion, all of the defendants would be subject to personal jurisdiction in the courts of Indonesia.

The Indonesian lawyer's affidavit suggests a seemingly absurd Indonesian extraterritoriality rule: global jurisdiction of Indonesian courts for any case involving an Indonesian plaintiff. One assumes that jurisdiction over defendants exists on consent, contacts, or some similar basis.