The **NATIONAL ASBESTOS WORK-ERS MEDICAL FUND, et al.,**
Plaintiffs,

v.

**PHILIP MORRIS, INC.,**
**et al., Defendants.**

**No. 98 CV 1492(JBW).**

United States District Court,
E.D. New York.

March 3, 2000.

See also 2000 WL 251583.

Law Offices of Peter G. Angelos, P.C., Baltimore, MD, by H. Russell Smouse, E. David Hoskins, Kenneth D. Pack, for Plaintiffs.

Simpson Thacher & Bartlett, New York City, by Joseph M. McLaughlin, Patrick D. Bonner, Jr., David M. Moss, for Defendants.

### AMENDED MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

## I. INTRODUCTION

A number of self-insured building trades health and welfare plans have brought suit against the tobacco industry under the Racketeer Influenced and Corrupt Organizations Act ("RICO") seeking to recover millions of dollars expended in connection with tobacco-related illnesses of their members. B.A.T. Industries, p.l.c. ("BAT"), the British holding company parent of defendant Brown & Williamson Tobacco Corporation ("B & W"), has moved for judgment on the pleadings on the ground of lack of personal jurisdiction. Because service on BAT was not authorized by RICO's nationwide service provision, personal jurisdiction must be based on either New York law or, in the event BAT is not subject to the jurisdiction of the courts of New York or any other state, on Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long arm provision.

In a similar motion in a related case, *Simon v. Philip Morris, Inc.*, 86 F.Supp.2d 95 (E.D.N.Y. 2000), evidence of BAT's participation in an industry-wide conspiracy with significant links to New York supported the exercise of personal jurisdiction under CPLR 302(a)(2). CPLR 301 and 302(a)(3)(ii) afforded additional jurisdictional bases. Personal jurisdiction over BAT was held to comport with the Due Process Clause of the Fourteenth Amendment. The same conclusion is required in the instant case. Federal long arm jurisdiction is unavailable.

## II. PROCEDURAL HISTORY

Suit was filed in February 1998 asserting RICO and various pendent state law claims. In June 1998 BAT filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Almost simultaneously a similar motion filed by BAT in *Falise v. American Tobacco Co.* was denied as unripe for decision because of the need for further discovery on the personal jurisdiction issue. *See* No. 97 CV 7640, 1998 WL 372401 (E.D.N.Y. July 2, 1998). A discovery scheduling order was entered. *See* Order dated July 21, 1998. Guided by these two orders, in August 1996, BAT and the *National Asbestos* plaintiffs stipulated that BAT would withdraw its 12(b)(2) motion, file an answer preserving its jurisdictional defense, and provide plaintiffs with information in accordance with the *Falise* order.

BAT renewed its personal jurisdiction motion in February, 1998 pursuant to Rule 12(c). That Rule permits conversion of a

motion for judgment on the pleadings into one for summary judgment under Rule 56 when matters outside the pleadings are presented for the court's consideration.

In view of the extensive materials submitted and considered, BAT's Rule 12(c) motion was converted into a summary judgment motion. *See generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (2d ed.1990). It was denied by order of July 19, 1999. This memorandum explains the reasons for the denial.

## III. FACTS

Substantially the same jurisdictional facts are alleged here as in *Simon.* *See* 86 F.Supp.2d at 99–119. Essentially the same documents are relied upon by the plaintiffs in both cases. As in *Simon,* supplementation of the record with tobacco industry documents posted on the website of the University of California at San Francisco's Library and Center for Knowledge Management is warranted. *See* http://www.library.ucsf.edu/tobacco. The findings in *Simon* are adopted and made a part of this memorandum.

## IV. LAW AND ITS APPLICATION

### A. Federal Rules of Civil Procedure

Rule 4(k) of the Federal Rules of Civil Procedure governs amenability to suit in a federal district court. It specifies the circumstances in which service of process confers personal jurisdiction over a defendant, providing for service authorized by state law (Rule 4(k)(1)(A)) or by federal law (Rules 4(k)(1)(D) and Rule 4(k)(2)). Insofar as pertinent, the Rule, denominated "Territorial Limits of Effective Service" reads:

(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

(A) who could be subjected to the jurisdic-

tion in the state in which the district court is located, or

. . . .

(D) when authorized by a statute of the United States.

(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.P. 4(k).

For the reasons discussed below in more detail, because BAT was not served with process in accordance with RICO's nationwide service provision, Rule 4(k)(1)(D) does not afford a basis for jurisdiction; the personal jurisdiction of New York's (and most likely other states') courts renders Rule 4(k)(2) inapplicable. The same basis as in *Simon* is provided by Rule 4(k)(1)(A). *See Simon,* 86 F.Supp.2d at 119–26.

### B. RICO Jurisdiction

Section 1965 of title 18 of the United States Code contains RICO's broad venue and nationwide service provisions. They provide:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any [civil RICO] action . . . in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial

district of the United States by the marshal thereof.

18 U.S.C. § 1965(a), (b) (1994).

Under the generous venue prerequisites of section 1965(a), a civil RICO suit can be instituted in any district which has minimum contacts with at least one defendant. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir.1998).

Section 1965(b) provides for nationwide service of process on co-defendants residing outside the forum should the "ends of justice" so require. *See id.* The "ends of justice" qualification includes situations in which, absent section 1965(b), it would be impracticable to bring all co-defendants together in a single action because no district court could exercise personal jurisdiction over all of them. *See, e.g., Daly v. Castro Llanes*, 30 F.Supp.2d 407, 413 (S.D.N.Y.1998); *cf. PT United Can Co.*, 138 F.3d at 71 n. 5 (not reaching the issue since appellant had not challenged trial court's holding that ends of justice did not require it to assert jurisdiction).

By its terms the section applies to parties "residing in any other district." This language appears to limit the section's coverage to United States residents. Despite this restriction, some courts have exercised RICO jurisdiction over foreign individuals and entities who may have resided outside the United States. *See, e.g., Herbstein v. Bruetman*, 768 F.Supp. 79, 81 (S.D.N.Y. 1991) (exercising personal jurisdiction over Argentinian corporation under RICO section 1965); *Nagoya Venture Ltd. v. Bacopulos*, No. 96 Civ. 9317, 1998 WL 307079, at *4 (S.D.N.Y. June 11, 1998) (exercising RICO jurisdiction over Canadian corporations); *Madanes v. Madanes*, 981 F.Supp. 241, 260 (S.D.N.Y.1997) (exercising RICO jurisdiction over Argentinian citizen and resident and corporation organized under laws of Isle of Man).

The Second Circuit's recent interpretation of 1965(b) as providing for jurisdiction over additional parties "not residing in the district" if the ends of justice require, *see PT United Can Co.*, 138 F.3d at 71, would seem to permit the assertion of personal jurisdiction over RICO defendants residing abroad. Nevertheless, such defendants must be served with process within the United States. *See, e.g., Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 817 F.Supp. 326, 331–32 (E.D.N.Y.1993) (RICO does not provide for extraterritorial service on persons outside the United States); *Stauffacher v. Bennett*, 969 F.2d 455, 460–61 (7th Cir.) (same), *cert. denied*, 506 U.S. 1034, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992); *Brink's Mat Ltd. v. Diamond*, 906 F.2d 1519, 1521–22 (11th Cir.1990) (same); *see also, Herbstein*, 768 F.Supp. at 81 (exercising RICO jurisdiction over Argentinian corporation whose director was served in Illinois); *cf. Nagoya Venture Ltd.*, 1998 WL 307079, at *4 & n. 5 (exercising RICO jurisdiction over Canadian corporations; court satisfied that service was adequate to provide notice to all defendants); *Madanes*, 981 F.Supp. at 260 (exercising RICO jurisdiction over Argentinian individual and Isle of Man corporation; specifics of service not provided).

BAT, a British holding company which maintains no offices in the United States, was served in London by registered mail. Since such service is not authorized by RICO, plaintiffs must rely on other jurisdictional bases provided by Rule 4(k).

## C. Jurisdiction Under New York Law

### 1. CPLR

The extensive evidence supporting jurisdiction over BAT was set forth in detail in *Simon*, 86 F.Supp.2d at 99–119. It demonstrates, for jurisdictional purposes only, that BAT participated in a tobacco industry conspiracy to mislead and addict the American public by committing such acts as adopting the fraudulent position that the link between smoking and disease had not been proved and imposing this

stance on its subsidiaries; blocking research in, and development of, less harmful cigarettes; and working with B & W to hide incriminating smoking and health information generated by BAT's own research programs. As demonstrated in *Simon*, these acts, together with the New York acts of BAT's co-conspirators, support the exercise of personal jurisdiction under New York law. *See Simon*, 86 F.Supp.2d 119–26 (CPLR 302(a)(2)); *id.* at 121 (CPLR 302(a)(3)(ii)); *id.* (CPLR 301).

## 2. Due Process

As established in *Simon*, it is fair and reasonable for BAT to be required to defend this case in New York. The "minimum contacts" prong of the traditional Fourteenth Amendment due process analysis is satisfied by the New York effects of BAT's intentional acts and by the fact that at the time it joined the conspiracy it either knew or should have known that acts in furtherance had already been committed in New York. *See Simon*, 86 F.Supp.2d 126–37. Its de facto design of cigarettes for the United States market also supplied "minimum contacts." *See id.* at 131–33.

Supporting a finding of reasonableness in requiring BAT to personally appear in New York is the minimal burden that litigating in New York would impose. Also significant are New York's strong interest in the litigation and the interest of the plaintiffs in convenient and effective relief as well as the lack of adverse impact on the procedural and substantive policies of other nations whose interests would be affected by the assertion of jurisdiction. *See id.*

## D. Rule 4(k)(2), Federal Long Arm Jurisdiction

There is no need now to analyze federal long arm jurisdiction over BAT, since Rule 4(k)(2) can have no application. That rule operates only when jurisdiction is not available in any state. The nationwide impact of BAT's intentional conduct creates a solid basis for the exercise of juris-

diction not only in New York, but in the courts of many other states, making Rule 4(k)(2) inapplicable. *See Simon*, 86 F.Supp.2d 95 (asserting personal jurisdiction over BAT under New York law); *see also, e.g., Maine v. Philip Morris, Inc.*, No. CV–97–134 (Maine Super. Ct. Oct. 14, 1998) (same under Maine law); *Alaska v. Philip Morris, Inc.*, No. 1JU–97–015CI (Alaska Super.Ct. Oct. 9, 1998) (same under Alaska law); *Montana v. Philip Morris, Inc.*, No. CDV–97–306 (Montana First Jud. Dist. Ct. Sept. 22, 1998) (same under Montana law); *Kelly ex rel. Michigan v. Philip Morris, Inc.*, No. 96084281–CZ (Mich.Cir.Ct. Sept. 14, 1998) (same under Michigan long arm); *Washington v. American Tobacco Co.*, No. 96–2–15056–8 SEA (Washington Super. Ct. June 9, 1998) (same under Washington law); *Massachusetts v. Philip Morris, Inc.*, No. 95–7378–J (Massachusetts Super. Ct. Mar. 20, 1998) (same under Massachusetts law); *Oklahoma v. R.J. Reynolds Tobacco Co.*, No. CJ–96–1499 (Oklahoma Dist. Ct. Dec. 8, 1997) (same under Oklahoma law).

## E. Statutory Hiatus

RICO's venue and service provisions, set out in Part IV.B, *supra*, evince Congress' intent to facilitate trial of all participants in a RICO conspiracy in a convenient district in a single civil action. *See, e.g., Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir.1986) (Congress intended the "ends of justice" language to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 796, 803 (N.D.Ohio 1998) (same); *Shulton, Inc. v. Optel Corp.*, Civ. A. No. 85–2925, 1986 WL 15617, at *4 (D.N.J. Sept.29, 1986) (rationale for section 1965(b) "is to avoid a 'jurisdictional gap,' in which no single court could obtain jurisdiction in personam over all of the defendants"). At the time RICO was enacted in 1970, a

nationwide service provision may have been adequate to this goal. Since then, however, RICO conspiracies have become increasingly transnational in scope. It is not uncommon to find at least one foreign corporation or individual named as a defendant in a civil RICO suit. *See, e.g.,* Part IV.B, *supra* (citing cases).

The extranational reach of RICO has long been recognized by the court of appeals for the Second Circuit. *See, e.g., North South Finance Corp. v. Al–Turki,* 100 F.3d 1046, 1051 (2d Cir.1996) ("Clearly, a corporate defendant that is a foreign entity is not for that reason alone shielded from the reach of RICO. Less clear is the character and amount of activity in the United States that will justify RICO subject matter jurisdiction over a foreign entity." (citations omitted)); *Alfadda v. Fenn,* 935 F.2d 475, 479 (2d Cir.1991) (predicate acts occurring primarily in the United States were basis of subject matter jurisdiction for RICO claims based on international securities transaction), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991); *United States v. Parness,* 503 F.2d 430, 439 (2d Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975) (rejecting argument that RICO was not intended to apply to foreign enterprises).

Yet available jurisdictional provisions do not reach all participants in RICO conspiracies in all cases. Jurisdiction over internationally-based RICO defendants who are served abroad is not, as has already been pointed out, authorized by RICO's nationwide service provision. *See* Part IV.B, *supra.* Such defendants may be subjected to jurisdiction in personam under either Rule 4(k)(1)(A), if they are amenable to jurisdiction in the forum state, or under Rule 4(k)(2), if they are not amenable to suit in any state but have sufficient contacts with the nation as a whole to satisfy the Due Process Clause of the Fifth Amendment. (The Fifth and Fourteenth Amendment due process requirements should be deemed, for these purposes

identical. The only difference between the two is the geographical scope—statewide or nationwide—by reference to which the fairness and reasonableness of jurisdiction must be evaluated.).

There may be some foreign RICO conspirators not covered by this scheme. For example, the long arm statute of the state where suit has been brought might not provide a basis for jurisdiction over a defendant who is nonetheless subject to suit in the courts of some other state. In such a situation application of Rule 4(k)(2) would be blocked. The plaintiff would be forced to bring a separate suit against the defendant in another state, to forego suing that foreign defendant, or to transfer the entire suit to what could be a distant and inconvenient United States forum having little relation to the events giving rise to the case or the parties involved—a result at odds with RICO's liberal service and venue provisions.

Consideration should be given to curing this jurisdictional hiatus by providing for worldwide service of process in RICO, as in other federal statutes reaching acts abroad having an impact in the United States, such as the Clayton Act, on which civil RICO was modeled. *See* Clayton Act § 12, 15 U.S.C. § 22 (1994) (process in antitrust suits "may be served in the district of which [the corporation] is an inhabitant, or wherever it may be found"); *see* Michael Goldsmith & Vicki Rinne, *Civil RICO, Foreign Defendants, and "ET",* 73 Minn. L.Rev. 1023, 1077–78 (1989) (recommending amendment of section 1965 of title 18 to provide for service of process outside the United States).

## V. CONCLUSION

Personal jurisdiction has been acquired over BAT. Its motion for judgement on the pleadings is denied.

So Ordered.