800537 ONTARIO INC., an Ontario, Canada corporation d/b/a Acura–West; and Gregory Leon, Plaintiffs,

v.

AUTO ENTERPRISES, INC., a Michigan corporation; World Imports U.S.A., Inc., a Florida corporation; William Luther; Philip Trupiano; Claus Lukner; and Jake Sydorowicz, Defendants,

and

Auto Enterprises, Inc., a Michigan corporation, Counter–Plaintiff,

v.

800537 Ontario Inc., a foreign corporation d/b/a Acura–West; and Gregory Leon, Counter–Defendants.

No. 99–CV–75615–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 27, 2000.

**1118**

Sheri B. Caraldo, Southfield, MI, for 800537 Ontario Inc., Gregory Leon.

David Lawson, Birmingham, MI, for Auto Enterprises, Willam Luther, Philip Trupiano.

Thomas W. Cranmer, Bloomfields Hills, MI, for World Imports, USA, Claus Lukner, Jake Sydorowicz.

### OPINION

DUGGAN, District Judge.

On November 19, 1999, Plaintiffs Acura–West and Gregory Leon filed a five-count complaint against Defendants Auto Enterprises, Inc., World Imports U.S.A., Inc., William Luther, Phillip Trupiano, Claus Lukner, and Jake Sydorowicz,[1] alleging two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Counts I & II),

---

1. Defendants World Imports, Lukner, and Sydorowicz shall be referred to collectively as the "World Imports Defendants," whereas Defendants Auto Enterprises, Luther, and Trupiano shall be referred to collectively as the "Auto Enterprises Defendants."

breach of contract (Count III), fraudulent, negligent, and/or innocent misrepresentation (Count IV), and unjust enrichment (Count V), stemming from Defendants' alleged activity of obtaining refunds from the Canadian Government for Goods and Services Taxes ("GST") that were allegedly never actually levied. On January 10, 2000, the World Imports Defendants filed a motion to dismiss asserting that Plaintiffs had failed to sufficiently allege a RICO "enterprise" and that this Court lacked personal jurisdiction over them. Oral argument regarding the World Imports Defendants' original motion for summary judgment was heard on April 6, 2000, during which the Court expressed its concern that Plaintiffs had not sufficiently pled a RICO enterprise and granted Plaintiffs leave to file an amended complaint.

On April 20, 2000, Plaintiffs filed a seven-count first amended complaint alleging one broad RICO claim against all Defendants (Count I), one broad RICO conspiracy claim against all Defendants (Count II), one narrower RICO claim against only the World Imports Defendants (Count III), one narrower RICO claim against only the Auto Enterprises Defendants (Count IV), breach of contract against all Defendants (Count V), fraudulent, negligent and/or innocent misrepresentation against all Defendants (Count VI), and unjust enrichment against all Defendants (Count VII). On May 4, 2000, the World Imports Defendants filed a "renewed" motion to dismiss asserting that Plaintiffs had again failed to sufficiently allege a RICO "enterprise," misjoinder, improper venue, and lack of personal jurisdiction.[2] Plaintiffs filed a response to the World Imports Defendants' motion on May 18, 2000, and on May 25, 2000, the World Imports Defendants filed a reply. For the reasons stated below,

Defendants' motion to dismiss shall be granted

### *Background*

The following allegations have been taken from Plaintiffs' first amended complaint. Both Defendant Auto Enterprises, a Michigan corporation with its principal place of business in Michigan, and Defendant World Imports, a Florida corporation with its principal place of business in New York, are in the business of importing cars from Canada for resale in the United States. Plaintiff Acura–West, a Canadian Corporation, is in the business of selling and servicing motor vehicles in southwestern Ontario.

Since 1993, Defendant World Imports, which is not a registered importer, has utilized the services of Defendant Auto Enterprises in connection with ninety-eight percent of the vehicles it has imported from Canada. (Am. Compl. ¶¶ 12.A & 17). Under its contracts with Defendant World Imports, Defendant Auto Enterprises prepares and files all paperwork and fees necessary to import Defendant World Imports's vehicles from Canada, in exchange for which Defendant World Imports pays Defendant Auto Enterprises a designated fee.[3] (*Id.* ¶¶ 20 & 24 & Ex. A). As part of its contracts with Defendant Auto Enterprises, Defendant World Imports grants Defendant Auto Enterprises power of attorney to sign and execute all documents necessary to import its vehicles into the United States. (*Id.* ¶¶ 12.B & 22 & Ex. A). Defendant World Imports also provides Defendant Auto Enterprises with all information necessary for customs entry, including a copy of the manufacturer's invoice for each car. (*Id.* ¶ 21).

In 1994, Plaintiff Gregory Leon, president and part owner of Plaintiff Acura–

---

**2.** The Auto Enterprises Defendants have joined the World Imports Defendants' motion to dismiss with respect to whether Plaintiffs have sufficiently alleged a RICO enterprise under Counts I and II of the amended complaint.

**3.** It appears that Defendants would execute a separate contract for each vehicle, or group of vehicles, to be imported at a particular time.

West, met Defendant Lukner, president of Defendant World Imports, and Defendant Sydrowicz, an employee of Defendant World Imports, at an auction in Toronto, Canada, where Defendants Lukner and Sydrowicz expressed an interest in purchasing automobiles from Plaintiff Acura–West. (*Id.* ¶ 25). Defendants Lukner and Sydrowicz would negotiate the price for the vehicles imported from Plaintiff Acura–West via telephone and fax. (*Id.* ¶ 26). Plaintiff Leon would then prepare a standard form invoice for the sale of each vehicle that, in accordance with Canadian law, stated that no GST was being charged for the vehicle because it was being exported to the United States. (*Id.* ¶ 27 & Ex. B).

At the request of the World Imports Defendants, Plaintiff Leon would also prepare another copy of the standard form invoice that included a breakdown of the GST that would have applied had Plaintiff Acura–West levied the tax. (*Id.* ¶ 29 & Ex. D). According to Plaintiffs, "[Plaintiff] Leon had no experience in the export of vehicles to the United States and was advised by Defendants that the border passes were required only so that its importer could avoid delays at Customs and facilitate entry of the vehicles into the United States." (*Id.* ¶ 30).

Shortly after Defendant World Imports began purchasing vehicles from Plaintiff Acura–West, Defendants Lukner and Sydrowicz suggested to Plaintiff Leon that Defendants Trupiano and Luther, the owners/operators of Defendant Auto Enterprises, may be interested in purchasing vehicles from Plaintiff Acura–West on behalf of Defendant Auto Enterprises. (*Id.* ¶ 31). Thereafter, Plaintiff Leon contacted Defendant Luther. (*Id.* ¶ 32). Without any explanation regarding its practice of providing Defendant World Imports with an additional invoice reflecting the amount of GST otherwise due on the vehicles, Defendant Luther indicated to Plaintiff Leon that Defendant Auto Enterprises would expect similar invoices. (*Id.* ¶ 33).

Between December 1994 and December 1996, Plaintiff Acura–West sold approximately 108 vehicles to Defendant Auto Enterprises and 18 vehicles to Defendant World Imports. (*Id.* ¶ 36). Both Defendant World Imports and Defendant Auto Enterprises subsequently submitted copies of the invoices that included the GST to the Canadian government requesting GST rebates. (*Id.* ¶ 37).

In February of 1999, Plaintiff Acura–West received a "Notice of Assessment" from the Canadian government in the amount of $457,271.56, which included $248,346.27 of GST allegedly collected from Defendants but not remitted to the Canadian government, plus interest and penalties. (*Id.* ¶ 38 & Ex. E). To mitigate its damages, Plaintiff Acura–West paid the assessment. (*Id.* ¶ 39).

On November 19, 2000, Plaintiffs filed suit against Defendants alleging various RICO and state law claims stemming from the activities alleged above. On January 19, 2000, Defendant Auto Enterprises filed a counter-complaint against Plaintiffs asserting that Plaintiffs had fraudulently claimed GST rebates that belonged to Defendant Auto Enterprises.

### Discussion

Currently before the Court is the World Imports Defendants' renewed motion to dismiss. In their motion to dismiss, the World Imports Defendants assert that Counts I and II of the amended complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs have failed to sufficiently allege a RICO enterprise. Once Counts I and II are dismissed, the World Imports Defendants assert that the remaining claims against them must be dismissed for misjoinder pursuant to Rules 20(a) and 21 of the Federal Rules of Civil Procedure because the remaining claims do not arise from the same transaction or series of transactions or, in the alternative, for improper venue. The World Imports

Defendants also contend that notwithstanding the RICO claim, Plaintiffs' claims against them must be dismissed for lack of personal jurisdiction.

### 1. RICO Enterprise Under Counts I and II

■ Count I of the amended complaint alleges a broad RICO claim against all Defendants in violation of 18 U.S.C. § 1962(c), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Count II relates to Count I in that Count II alleges that Defendants conspired to violate § 1962(c). To prove a violation of RICO, Plaintiffs must establish: "1) that there were two or more predicate offenses; 2) that an 'enterprise' existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir.2000) (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir.1993)).

■ "The Supreme Court has defined an 'enterprise' under [RICO] as a 'group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)). To be held responsible under RICO, "a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *Id.* (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S.Ct. 1163,

1172, 122 L.Ed.2d 525 (1993); *Stone v. Kirk*, 8 F.3d 1079, 1091 (6th Cir.1993)).

The World Imports Defendants contend that Counts I and II of the amended complaint must be dismissed for failure to state a claim because Plaintiffs have failed to sufficiently allege a RICO enterprise. Plaintiffs, on the other hand, contend that they have properly alleged an "association-in-fact" enterprise, consisting of Defendant World Imports' relationship with Defendant Auto Enterprises. (Pls.' 5/18/00 Resp. at 3).

■ To establish an association-in-fact enterprise, Plaintiffs must prove: "1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged." *VanDenBroeck*, 210 F.3d at 699 (citing *Frank*, 4 F.3d at 1386). These elements have been interpreted to require "a certain amount of organizational structure which eliminates simple conspiracies from [RICO's] reach." *Id.* As the Sixth Circuit has explained, "simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *Id.* "The hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing."[4] *Id.* (internal quotations omitted). "These characteristics are mandated in order to avoid the danger of guilt by association that arises because RICO does not require a proof of a single agreement as in a conspiracy case, and in order to ensure that criminal enterprises, which are RICO's target, are distinguished from individuals who associate for the commission of sporadic crime." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir.1989) (internal quotations omitted).

---

4. For example, "'the command system of a Mafia family is an example of th[e] type of structure' that is distinct from the pattern of racketeering activity." *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir.2000) (quoting *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.1982)).

■ " 'Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc, basis.' " *United States v. Tocco,* 200 F.3d 401, 425 (6th Cir.2000) (quoting *United States v. Kragness,* 830 F.2d 842, 856 (8th Cir. 1987)). As the Seventh Circuit has explained, "[a] RICO enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *United States v. Rogers,* 89 F.3d 1326, 1337 (7th Cir.1996) (citations and internal quotations omitted); *see also VanDenBroeck,* 210 F.3d at 700 (requiring "evidence of some sort of 'chain of command' or other evidence of a hierarchy, even a highly limited one"); *United States v. Fiel,* 35 F.3d 997, 1003 (4th Cir.1994) (stating that "[t]he hallmark concepts that identify RICO enterprises are 'continuity, unity, shared purpose and identifiable structure' ") (internal quotations omitted).

■ This "organizational pattern or system of authority" is often characterized by the fact that although the personnel of the enterprise may come and go, the enterprise's organizational structure remains. *See Fiel,* 35 F.3d at 1003 ("Although the faces in the group may have changed, there was substantial evidence of a structure within the group within which the various associates operated according to their specific functions."); *United States v. Church,* 955 F.2d 688, 699 (11th Cir.1992) ("The personnel of the enterprise was not the same from beginning to end, but as it shifted, it displayed continuity."). Where the enterprise consists of two sub-groups, such as Plaintiffs allege, " 'what is necessary is evidence of systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination.' " *United States v. Owens,* 167 F.3d 739, 751 (1st Cir.1999) (quoting *Libertad v. Welch,* 53 F.3d 428, 443 (1st Cir.1995)).

■ The only allegations asserted by Plaintiffs that even arguably evidence some type of relationship between Defendant World Imports and Defendant Auto Enterprises are the following:

12.A. The World Imports Defendants have been doing business with the Michigan defendants, Auto Enterprises, Trupiano and Luther (collectively, ["]the Auto Enterprises Defendants"), since World Imports first started importing vehicles from Canada into the United States in 1993 and Defendant Auto Enterprises has been the importer for approximately 98% of World Imports' imported vehicles.

12.B. The World Imports Defendants have given the Michigan Defendant, Auto Enterprises, power of attorney and authority to act as agent for World Imports with respect to its importation of vehicles.

18. Defendant World Imports is not a registered importer and therefore utilizes the registered importer services of Defendant Auto Enterprises for the importation of vehicles from Canada to the United States.

19. One of the primary functions of Defendant Auto Enterprises as the registered importer for Defendant World Imports is to facilitate the movement of vehicles through U.S. Customs.

20. Defendant World Imports entered into a contract with Defendant Auto Enterprises in which, among other things, Defendant Auto Enterprises agreed to provide all necessary and applicable forms and documents to its customs broker for submittal to U.S. Customs to facilitate entry of the Canadian vehicles into the United States (Exhibit A, Contract for Registered Importer Services).

21. Pursuant to the Agreement between Defendant World Imports and Defendant Auto Enterprises, World Imports agreed to provide Auto Enterprises with information and execute documents necessary for customs entry, including, but not limited to, a copy of

the manufacturer new car vehicle invoice.

22. Additionally, Defendant World Imports was required to, and did, execute a power of attorney granting authority to Auto Enterprises to act on its behalf with respect to the importation of vehicles into the United States (Exhibit A, p. 7).

24. The Auto Enterprise Defendants, at the direction of the World Imports Defendants, imported the vehicles which the World Imports Defendants purchased from Acura–West and sought to bring into the United States.

31. Shortly after Defendant World Imports began purchasing vehicles from Acura–West, Defendants Lukner and Sydorowicz suggested to Leon that Defendants Trupiano and Luther of Defendant Auto Enterprises might be interested in purchasing vehicles directly from Acura–West.

Such allegations, however, evidence nothing more than the fact that Defendant World Imports has a business relationship with Defendant Auto Enterprises, under which Defendant Auto Enterprises prepares the necessary paperwork to import Defendant World Imports's vehicles. The mere fact that Defendant World Imports and Defendant Auto Enterprises have engaged in a business relationship is insufficient to establish that Defendants "functioned as a continuous unit" for RICO purposes. *See VanDenBroeck*, 210 F.3d at 700.

Furthermore, the facts alleged in the amended complaint evince no type of mechanism by which the alleged "association-in-fact" conducted its affairs or made decisions. At most, the allegations in the amended complaint establish only that the World Imports Defendants would decide what vehicles it wanted to import and then provide the Auto Enterprises Defendants with the necessary information for the Auto Enterprises Defendants to prepare and submit the required paperwork. None of the allegations in the amended complaint support a conclusion that the World Imports Defendants and the Auto Enterprises Defendants participated in any type of joint-decisionmaking regarding the alleged enterprise, nor any type of hierarchy beyond their contractual relationship.

Although Plaintiffs do allege that the Auto Enterprises Defendants also engaged in the same conduct, Plaintiffs do not allege that the Auto Enterprises Defendants did so at the direction of any of the other Defendants, or that the World Imports Defendants participated in any manner in the Auto Enterprises Defendants' decision to do so. The most Plaintiffs' amended complaint establishes is that both the World Imports Defendants and the Auto Enterprises Defendants engaged in the same allegedly fraudulent conduct against the same Plaintiffs. None of the allegations in the amended complaint establish that the World Imports Defendants and the Auto Enterprises Defendants associated together for the common purpose of defrauding Plaintiff. In conclusion, the Court is satisfied that Plaintiffs have failed to allege a RICO enterprise with respect to Counts I and II of the complaint and therefore, Defendants motion to dismiss shall be granted with respect to these counts.[5]

---

5. The World Imports Defendants also contend that Counts I and II must be dismissed because Plaintiffs have failed to allege that the enterprise has an existence beyond that which is necessary to commit the alleged racketeering activities. (World Imports Defs.' 5/4/00 Br. at 8–9). The Sixth Circuit, however, has rejected the notion that RICO requires proof that the "enterprise" and "pattern of racketeering activity" are distinct.

*See United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir.1985). Furthermore, at least one circuit has held that the participation of a corporation in a racketeering scheme may be sufficient to give the enterprise a structure separate from the racketeering activity. *See Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 786 (9th Cir.1996); *see also General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 670, 680 (E.D.Mich.1996) (relying

### 2. Personal Jurisdiction

The World Imports Defendants also contend that regardless of the Court's decision concerning Counts I and II of the amended complaint, this Court lacks personal jurisdiction over them and therefore, the claims against them must be dismissed. Because the Court has already determined that Counts I and II of the amended complaint must be dismissed for failure to state a claim, the only remaining claims against the World Imports Defendants are a narrower RICO claim involving only the World Imports Defendants (Count III), and state law breach of contract, misrepresentation, and unjust enrichment claims (Counts V–VII).

 Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). Plaintiffs must set forth specific facts showing that this Court has jurisdiction. However, because the Court is relying solely upon the parties' pleadings, Plaintiffs "must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* The Court is obligated to examine each of Plaintiffs' factual allegations made in support of exercising personal jurisdiction over the World Imports Defendants and determine whether such allegations, if true, would be sufficient to establish personal jurisdiction.

In both their original and renewed responses, Plaintiffs assert that this Court has personal jurisdiction over the World Imports Defendants "pursuant to 18 U.S.C. § 1965." (Pls.' 3/22/00 Resp. at 12, Pls.' 5/18/00 Br. at 15). Although the entirety of Plaintiffs' arguments center around § 1965 of RICO, citing no Michigan law, statutory or otherwise, Plaintiffs

do make one singular statement, at the end of their original response, that "[n]ot only is jurisdiction proper under the RICO Act, but it now appears that jurisdiction would be proper under a traditional long-arm analysis, as well." (Pls.' 3/22/00 Resp. at 17). The Court generously interprets this statement as an argument that this Court also has limited personal jurisdiction over the World Imports Defendants. Therefore, the Court will address personal jurisdiction under both Michigan's long-arm statutes, as well as § 1965 of RICO.[6]

### A. Defendants Lukner and Sydorowicz

 Because Plaintiffs have properly asserted RICO and state law claims against Defendants Lukner and Sydorowicz in their individual capacities, both Michigan law and RICO may provide a basis for the Court to exercise personal jurisdiction over these Defendants. *See Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir.1989) ("Personal jurisdiction of federal courts of course may be grounded in state long-arm (or other) jurisdiction statutes in civil RICO cases as in federal question cases generally"). Michigan's long-arm statute provides for limited personal jurisdiction over a non-resident defendant when the cause of action *arises out of* certain of the defendant's contacts with the state, the only one of which that is relevant in the case *sub judice* being "[t]he transaction of any business within the state." *See* MICH. COMP. LAWS § 600.705.

The amended complaint identifies the following contacts on behalf of Defendants Lukner and Sydorowicz:

> A. The World Imports Defendants have been doing business with the Michigan Defendants ... since World Imports first started importing vehicles from Canada into the United States in

---

upon *Webster* for proposition that participation of corporation is sufficient to establish enterprise separate from racketeering activity).

**6.** However, because Plaintiffs' responses are completely devoid of any statements that can

reasonably be construed as an argument that this Court has general personal jurisdiction over the World Imports Defendants, the issue of general personal jurisdiction shall not be addressed by the Court.

1993 and Defendant Auto Enterprises has been the importer for approximately 98% of World Imports' imported vehicles.

B. The World Imports Defendants have given the Michigan Defendant, Auto Enterprises, power of attorney and authority to act as agent for World Imports with respect to importation of vehicles.

C. In an agreement between the World Imports Defendants and the Auto Enterprises Defendants, the World Imports Defendants have agreed to be bound by Michigan law.

\* \* \* \* \* \*

G. Defendant Lukner has traveled to Michigan to purchase a vehicle for World Imports.

H. Defendant Lukner has traveled to Michigan to attend the Detroit Auto Show on numerous occasions for both his own purposes and in the furtherance of World Imports' business and has accompanied his customers to the Auto Show.

I. Defendant Sydorowicz has previously traveled to Michigan to purchase a vehicle for World Imports.

J. Defendant Sydorowicz has traveled to Michigan to attend the Detroit Auto Show on numerous occasions for both his own purposes and in furtherance of World Import's business.

(Am.Compl.¶ 12).

 As an initial matter, the Court notes that the first three contacts asserted by Plaintiffs as contacts between "the World Imports Defendants" and Michigan are more properly interpreted as contacts between Defendant World Imports and Michigan. " 'Jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation.' " *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir.2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir.1974)). In any event, the Court is satisfied that Plaintiffs' cause of action does not "arise out of" Defendant World Imports's contracts with Defendant Auto Enterprises; nor does Plaintiffs' cause of action "arise out of" Defendants Lukner and Sydorowicz's attendance at the Detroit Auto Show, or the purchase of vehicles in Michigan.

Plaintiffs' claims against Defendants Lukner and Sydorowicz arise out of Defendant World Imports's contract with Plaintiffs, and Defendants Lukner and Sydorowicz's acts of requesting a duplicate invoice showing a GST and submitting that invoice to the Canadian Government. Plaintiffs have failed to allege that any of this conduct occurred in Michigan. Accordingly, Plaintiffs cannot rely upon Michigan's limited personal jurisdiction statute.

Therefore, the only possible basis for this Court to assert personal jurisdiction over Defendants Lukner and Sydorowicz is § 1965 of RICO, which states:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpena shall be issued for service upon any individual

who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

Plaintiffs contend that § 1965 allows for nationwide service of process and therefore, Defendants Lukner and Sydorowicz are subject to personal jurisdiction in *any* federal district court because the Due Process Clause of the Fifth Amendment requires only that Defendants have minimum contacts with the United States as a whole.

Whether Defendants Lukner and Sydorowicz are subject to personal jurisdiction in this forum therefore turns upon whether § 1965 of RICO authorizes nationwide service of process. There is a split of authority as to whether § 1965 authorizes nationwide service of process. The Second, Fifth, and Ninth Circuits have held that § 1965 does not authorize nationwide service of process. *See PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65 (2d Cir.1998); *Caldwell v. Palmetto State Sav. Bank of S.C.,* 811 F.2d 916 (5th Cir.1987); *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535 (9th Cir.1986). The Fourth, Eleventh, and Seventh Circuits, however, have held that § 1965 does authorize nationwide service of process. *See ESAB Group, Inc., v. Centricut, Inc.,* 126 F.3d 617 (4th Cir.1997); *Republic of Panama v. BCCI Holdings,* 119 F.3d 935 (11th Cir.1997); *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668 (7th Cir.1987). The Sixth Circuit has not addressed the issue.

In *Butcher's Union,* the Ninth Circuit rejected the notion that § 1965 permits nationwide service of process in all cases. According to the Ninth Circuit:

As section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.... Thus, merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions.

*Butcher's Union,* 788 F.2d at 539 (internal citations omitted).

In *Caldwell,* the Fifth Circuit addressed whether § 1965(d), not § 1965(b), authorizes nationwide service of process. Ultimately, the Fifth Circuit rejected this notion, interpreting § 1965(d) as requiring, at a minimum, proof "that a defendant be conducting business in the forum." *Caldwell,* 811 F.2d at 918.

In *PT United Can Co.,* the Second Circuit concluded that § 1965 does not authorize "nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *PT United Can Co.,* 138 F.3d at 71. Examining § 1965 in its entirety, the Second Circuit reasoned:

First, § 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.

Second, § 1965(b) provides for nationwide service and jurisdiction over "other parties" not residing in the district, who may be additional defendants of any kind, including co-defendants, third party defendants, or additional counterclaim defendants. This jurisdiction is not automatic but requires a showing

that the "ends of justice" so require. This is an unsurprising limitation. There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first reference, as set forth in § 1965(a), is to bring the action where suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora.

Next, § 1965(c) simply refers to service of subpoenas on witnesses. Thus, § 1965(d)'s reference to "[a]ll other process," means process other than a summons of a defendant or subpoena of a witness. This interpretation, one which gives meaning to the word "other" by reading sequentially to understand "other" as meaning "different from that already stated in subsections (a)-(c)," gives coherent effect to all sections of § 1965, and effectively provides for all eventualities without rendering any of the sections duplicative, without impeding RICO actions and without unnecessarily burdening parties. We conclude that the natural reading given to § 1965(b) by the 9th Circuit in *Butcher's Union* and the district court here was correct, and that this conclusion is borne out by a complete reading of the statute, a course of action which has not been followed by the courts that have read § 1965(d) in isolation to reach the opposite conclusion.

*Id.* at 71–72 (footnote omitted).

To the contrary, in *Lisak*, the Seventh Circuit held, with little discussion, that § 1965(b) contains "an explicit grant of nationwide service." *Lisak*, 834 F.2d at 672. Similarly, relying on § 1965(d) instead of § 1965(b), the Eleventh Circuit, in *Republic of Panama*, stated that by providing for service in any judicial district in

which a defendant is found, § 1965(d) provides for nationwide service of process and consequently, nationwide personal jurisdiction. *Republic of Panama*, 119 F.3d at 942; *see also ESAB Group*, 126 F.3d at 626. The Eleventh Circuit, however, rejected the notion that minimum contacts with the United States as a whole were sufficient to satisfy the Due Process Clause of the Fifth Amendment. Instead, the Eleventh Circuit incorporated the constitutional notions of "fairness" and "reasonableness," typically associated with the due process limitations of the Fourteenth Amendment, into the due process analysis under the Fifth Amendment. *Id.* at 945–56.

■■■■■ This Court, however, rejects the Eleventh Circuit's analysis because, in this Court's opinion, § 1965(d) does not authorize nationwide service of process for summons, *i.e.*, the power to bring a party before the Court. Section 1965(b) explicitly authorizes parties "to be summoned," whereas § 1965(d) authorizes nationwide service of "[a]ll *other* process." 18 U.S.C. § 1965(b) & (d) (emphasis added). Furthermore, this Court agrees with the Second and Ninth Circuits that § 1965(b) only authorizes "nationwide service of process" upon *other* defendants if the Court has personal jurisdiction over at least one defendant. *See PT United Can Co.*, 138 F.3d at 71; *Butcher's Union*, 788 F.2d at 539.

■■■■■ The Court is satisfied that Plaintiffs have failed to establish a *prima facie* showing of personal jurisdiction over Defendants Lukner and Sydorowicz. With respect to Plaintiffs' RICO claim against Defendants Lukner and Sydorowicz, Plaintiffs have failed to establish that at least one RICO defendant is subject to personal jurisdiction under § 1965(a).[7] *See PT*

---

7. Although Counts III and IV of the amended complaint contain specific allegations against only the individual defendants, these claims are entitled as being asserted against "the World Imports Defendants" and the "Auto

Enterprises Defendants," respectively. However, "a corporation cannot be both the enterprise and the RICO perpetrator." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 583 (5th Cir.1992); *see also Begala*

*United Can Co.,* 138 F.3d at 71; *Butcher's Union,* 788 F.2d at 539. Therefore, Plaintiffs cannot take advantage of § 1965(b).

 Even if § 1965(b) did not require personal jurisdiction over at least one other defendant, the Court is satisfied that Plaintiffs have failed to establish a *prima facie* showing that the ends of justice require this Court to exercise personal jurisdiction over Defendants Lukner and Sydorowicz. Presumably, Defendants Lukner and Sydorowicz are subject to personal jurisdiction in either New York or Florida. The Court sees no reason why Plaintiffs' claims against the World Imports Defendants must be heard in conjunction with Plaintiffs' claims against the Auto Enterprises Defendants. Accordingly, Defendants Lukner and Sydorowicz shall be dismissed for lack of personal jurisdiction.

### B. *Defendant World Imports*

 Because the Court has already determined that Counts I and II of the amended complaint must be dismissed, the only remaining claims against Defendant World Imports are the state law claims asserted in Counts V through VII.[8] Therefore, Michigan law provides the only basis for this Court to exert personal jurisdiction over Defendant World Imports. The amended complaint asserts the following contacts on behalf of Defendant World Imports:

A. The World Imports Defendants have been doing business with the Michigan Defendants ... since World Imports first started importing vehicles from Canada into the United States in 1993 and Defendant Auto Enterprises has been the importer for approximately 98% of World Imports' imported vehicles.

B. The World Imports Defendants have given the Michigan Defendant, Auto Enterprises, power of attorney and authority to act as agent for World Imports with respect to importation of vehicles.

C. In an agreement between the World Imports Defendants and the Auto Enterprises Defendants, the World Imports Defendants have agreed to be bound by Michigan law.

D. Defendant World Imports has purchased vehicle(s) directly from Auto Enterprises in Michigan.

E. Defendant World Imports has purchased vehicle(s) from Michigan residents/dealers other than Auto Enterprises.

F. Defendant World Imports has sold vehicles to Michigan residents(s).

(Am.Compl.¶ 12).

It is clear that Michigan law does not permit an exercise of limited personal jurisdiction over Defendant World Imports. As with Defendants Lukner and Sydorowicz, Michigan law provides for limited personal jurisdiction over a non-resident corporate defendant only when the cause of action *arises out of* certain of the corporate defendant's contacts with the state, the only one of which that is relevant in the case *sub judice* being "[t]he transaction of any business within the state." *See* MICH. COMP. LAWS § 600.715. However, Plaintiffs' state law claims against Defendant World Imports for breach of contract, misrepresentation, and unjust enrichment, do not "arise out of" the above alleged contacts.

Plaintiffs' state law claims "arise out of" the contract between Defendant World Imports and Plaintiff Acura–West. None

---

*v. PNC Bank,* 214 F.3d 776 (6th Cir.2000); *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 995 (8th Cir.1989). Therefore, to the extent that Counts III and IV were intended to assert RICO claims against Defendant World Imports and Defendant Auto Enterprises, they shall be dismissed. Furthermore, because Defendant World Imports cannot be a party to the RICO claim asserted in Count III of the complaint, Plaintiffs have failed to even allege that another defendant exists, besides Lukner and Sydorowicz, that may be subject to personal jurisdiction in Michigan.

8. *See* note 7 *supra.*

of the acts associated with this contract occurred in Michigan. All negotiations for such contract were conducted between Defendant World Imports in either New York or Florida, and Plaintiffs in Canada. Defendant World Imports submitted its requests for GST rebates from either New York or Florida to the Canadian government. Furthermore, none of the vehicles imported by Defendant World Imports ever entered Michigan. The Court is satisfied that Plaintiffs' state law claims do not "arise out of" the contacts alleged by Plaintiffs and therefore, there is no basis under Michigan law for this Court to assert limited personal jurisdiction over Defendant World Imports. Accordingly, the World Imports Defendants' motion to dismiss for lack of personal jurisdiction shall be granted with respect to Defendant World Imports also.

■ Even if the Court were to determine that Defendant World Imports is subject to personal jurisdiction in this forum, it would nonetheless decline to exercise supplemental jurisdiction over the state law claims asserted against Defendant World Imports (Counts V–VII). The Court has already determined that the only federal claims asserted against Defendant World Imports (Counts I & II) must be dismissed, and that all claims against Defendants Lukner and Sydorowicz must be dismissed for lack of personal jurisdiction (Counts III, V, VI, & VII). Therefore, the only claims remaining as to the World Imports Defendants are Plaintiffs' state law claims against Defendant World Imports for breach of contract, misrepresentation, and unjust enrichment (Counts V–VII). The Sixth Circuit has repeatedly indicated that once the federal claims in an action have been dismissed prior to trial, it is generally proper for the district court to order the supplemental state law claims dismissed without prejudice so they may be pursued in an appropriate state forum. *See Whittington v. Milby*, 928 F.2d 188, 194 (6th Cir.1991).

■ Discretion to decide state law claims on the merits once the federal claims have been dismissed should be exercised only when "*overwhelming* interests in judicial economy" exist. *Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047, 1055 (6th Cir.1986) (emphasis added); *see also Hankins v. The Gap, Inc.*, 84 F.3d 797, 802–03 (6th Cir.1996). In this case, the Court is satisfied that judicial economy would be served best if all claims against all of the World Imports Defendants, *i.e.*, Plaintiffs' RICO and state law claims, proceeded together. Furthermore, the Court is satisfied that the presence of Defendant World Imports is not essential to Plaintiffs' claims against the Auto Enterprises Defendants, which stem from conduct distinct from Defendant World Imports's conduct. Accordingly, in the event that this Court did have personal jurisdiction over Defendant World Imports, it would nonetheless decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant World Imports.

### 3. Venue and Misjoinder

The World Imports Defendants also contend that Plaintiffs' claims against them should be dismissed for improper venue and misjoinder. The World Imports Defendants' arguments, however, are moot in light of the fact that this Court has already determined that all claims asserted against the World Imports Defendants must be dismissed. Therefore, the Court will forego addressing the World Imports Defendants' arguments regarding venue and misjoinder.

### Conclusion

For the above reasons, the World Imports Defendants' motion to dismiss shall be granted with respect to all claims asserted in the first amended complaint. Counts I and II shall be dismissed for failure to sufficiently allege a RICO enter-

prise.[9] To the extent that Counts III, V, VI, and VII allege claims against Defendants Lukner and Sydorowicz, they shall be dismissed for lack of personal jurisdiction. To the extent that Counts V, VI, and VII assert claims against Defendant World Imports, they shall be dismissed for lack of personal jurisdiction, as well as this Court's decision to refrain from exercising supplemental jurisdiction over them.

An Order consistent with this Opinion shall issue forthwith.

---

9. The Court notes that the Auto Enterprises Defendants have joined in the World Imports Defendants' motion to dismiss Counts I and II of the first amended complaint for failure to sufficiently allege a RICO enterprise. *See* note 2 *supra*. Therefore, Counts I and II of the first amended complaint shall be dismissed in their entirety.